SANITARY REDUCTION WORKS OF SAN FRANCISCO v. CALIFORNIA
REDUCTION CO. et al.

(Circuit Court, N. D. California. May 25, 1899.)

No. 12,714.

1. PRELIMINARY INJUNCTION—NATURE OF EVIDENCE BEFORE GRANTING.
   The granting of a provisional injunction rests in the sound discretion of the trial court, and it is not necessary that the court should, before granting it, be satisfied, from the evidence before it, that the plaintiff should certainly prevail upon the final hearing of the cause.
2. MUNICIPAL CORPORATIONS—MODE OF GRANTING FRANCHISES AND PRIVILEGES —STATUTES OF CALIFORNIA.
   St. Cal. 1893, p. 299, § 1, prescribing the manner in which franchises and privileges shall be granted by municipalities, and providing that they

shall be granted in the manner therein provided, "and not otherwise," is applicable to the sale of the franchise in this case.

3. SAME—POWER TO MAKE SANITARY REGULATIONS—CONTRACTS FOR CREMATION OF GARBAGE.

Under the constitution and statutes of California, the board of supervisors of the city and county of San Francisco has power to provide for the removal and disposition of garbage and materials about to become nuisances, and may do so by contract giving the exclusive privilege of receiving and cremating such garbage for a term of years to a single person or corporation, and authorizing the collection of a fixed charge therefor.

4. PRELIMINARY INJUNCTION—RESTRAINING INTERFERENCE WITH CONTRACT.

The holder of a contract from a municipality giving it the right to receive and reduce all the garbage therefrom for a term of years, at a fixed charge therefor, on a showing that in compliance with such contract it has built a crematory at large expense, is entitled to a preliminary injunction against third parties, restraining them from collecting and removing garbage to other places, in violation of its contract rights, pending a hearing on its bill for the recovery of damages and for a permanent injunction.

On Order to Show Cause Why an Injunction Pendente Lite should not Issue.

William M. Pierson and Charles L. Tilden, for complainant.

Alfred L. Black, for respondent California Reduction Co.

Garret W. McEnerney, R. T. Harding, and Mich. Mullaney, for other respondents.

MORROW, Circuit Judge. This is an order to show cause why an injunction pendente lite should not issue. Complainant's bill is brought to secure an injunction restraining respondents from carrying away, outside of the city and county of San Francisco, certain garbage and other enumerated materials collected therein, of which complainant claims exclusive right to dispose; also, for the sum of $25,000 as damages for infringement of complainant's rights. Complainant's bill alleges that it is a corporation duly organized under the laws of California, and that the respondent corporation is organized under the laws of Colorado, and that the other respondents are aliens, residents of the city and county of San Francisco; that a certain order, known as "Order No. 2,965," was duly and finally passed, adopted, and enacted by the board of supervisors of the city and county of San Francisco on February 17, 1896; that another order, known as "Order No. 12" (second series), and one known as "Resolution No. 903" (fourth series), were also regularly enacted in order to carry out the provisions of order No. 2,965 the more effectively; that by virtue of order No. 2,965 a valid contract was entered into between the city and county of San Francisco and one F. E. Sharon, under the terms of which the said F. E. Sharon was to have the exclusive privilege, for the period of 50 years from February 17, 1896, of cremating and reducing garbage and other specified materials collected in the city and county of San Francisco, at a maximum charge of 20 cents per cubic yard, and the said F. E. Sharon, on his part, was to erect a crematory of the capacity of at least 300 tons a day, to reduce the enumerated substances within 24 hours of their receipt, and in such a manner as to avoid the emission of nox-

ious gases; that this contract was assigned by F. E. Sharon to complainant on September 18, 1896; that complainant has carried out the provisions of the contract, having erected a crematory at a cost exceeding $200,000, and notified the board of supervisors of its readiness to receive garbage for reduction, and that, unless complainant can have the exclusive right of cremating and destroying the materials mentioned, the contract and franchise so entered into will be rendered worthless; that complainant has faithfully discharged the obligations imposed upon it by the contract; that the respondents other than the respondent corporation have hindered complainant in carrying out its contract by diverting large quantities of garbage and other materials from complainant's crematory, and depositing them upon lands in the city and county of San Francisco, and that some of them have been arrested and fined for so doing; that the respondent corporation was organized under the laws of Colorado for the express purpose of depriving complainant of its lawful gains by preventing large quantities of garbage from reaching the crematories of complainant, and shipping it away and depositing it on lands in the county of San Mateo and elsewhere, outside of this city and county; that in pursuance of the same object the other respondents have conspired with the respondent corporation to deliver daily to it large quantities of garbage, thus diverting it from the crematory of complainant, and that in pursuance of this conspiracy the respondent corporation has hired two barges, capable of carrying more than 500 tons, for the purpose of transporting garbage and such materials to the county of San Mateo, and other places outside of this city and county; that, by reason of these acts of respondents, complainant's contract and franchise have been depreciated, and damages have been inflicted upon it to the amount of $25,000; that many of the enumerated materials, when reduced, are of value as articles of commerce, and that the acts of respondents are depriving complainant of just gains and profits to an amount which it is impossible to state; that complainant is under a contract with the city and county of San Francisco to incinerate all the garbage and enumerated articles, and, if respondents are allowed to divert material from complainant, complainant will be rendered liable for breach of contract, and will thereby suffer great and irreparable injury; that complainant has frequently requested respondents to desist, but they have not done so, and, if they continue to infringe upon complainant's rights, complainant will suffer great and irreparable injury, without any plain, adequate, and complete remedy at law; that respondents have not yet begun to engage in any business except the hiring of barges for the purpose of diverting garbage from complainant; that respondents' acts are contrary to equity; and that complainant has no remedy at law. Complainant therefore asks that an injunction provisional and perpetual issue, and for damages to the amount of $25,000. A restraining order was issued upon the filing of the bill.

A several answer was filed by the respondent California Reduction Company, and a joint and several answer by the other respondents. Respondents deny the validity of the Order No. 2,965, and that it was ever "duly and finally passed, adopted, and enacted."

Deny that the complainant has cremated the garbage and other materials within 24 hours, in such a way as to create no nuisance, but aver that a nuisance has been created by complainant. Deny that the respondent corporation was organized for the purpose of diverting garbage from complainant; that respondents have been repeatedly arrested and fined for violation of the ordinances named; that any confederacy or conspiracy has been formed for the purpose of interfering with complainant in carrying out the terms of its alleged franchise; that complainant is entitled to all the garbage, etc., collected in the city and county of San Francisco, but aver that it is only entitled to so much as is voluntarily taken to its crematory. Deny that complainant has suffered damage to an extent which it is impossible to estimate; that complainant is bound by any franchise to cremate all the garbage collected in the city and county of San Francisco, and that it ·will be liable for violation of the alleged franchise if it does not do so; that they have unlawfully combined, confederated, and conspired as charged in the bill. Admit that they have not yet begun to engage in any business other than the hiring of barges, as stated in the bill, but deny that this is being done in pursuance of any contract. Respondents also offer various affirmative defenses, by which respondent corporation avers that it is engaged in a lawful occupation, from which it would be deriving large profits, were it not for the stay order issued herein; that complainant can claim nothing under the franchise, as not having complied with the requirement that no nuisance shall be created in the reduction of the materials named; and because complainant has charged a sum in excess of 20 cents per cubic yard for the cremation of such materials. Respondents other than respondent corporation also offer affirmative defenses, in which they state that the Order No. 2,965 is null and void, in that the franchise was not granted to the highest bidder; that complainant has no rights under the franchise, because it has not complied with the conditions requiring the cremation of the specified materials without creating a nuisance, and has charged in excess of 20 cents per cubic yard of garbage brought for reduction; that respondents are scavengers, and were engaged in delivering materials to respondent corporation, and that they are prevented from lawful gains by the stay order granted herein; that the respondents are householders, and create large quantities of the materials enumerated; that these materials are of value to them, and they claim the right to dispose of them in such a way as not to cause a nuisance. Respondents ask for a dissolution of the stay order, and that no injunction be issued.

The argument of counsel has followed the ' wide range of the affirmative defenses set up in the respondents' answers. To determine these defenses now would, in effect, dispose of the case upon its merits,—a result not contemplated by the rules governing courts of equity in granting preliminary injunctions. "The order for such an injunction does not finally determine the rights of the parties to the action, and its only purpose and effect are to preserve the existing state of things until the case has been fully

heard by the court, and the entry of a final decree therein.    And it is equally well settled that the granting of a provisional injunction rests in the sound discretion of the trial court, and that it is not necessary that the court should, before granting it, be satisfied from the evidence before it that the plaintiff will certainly prevail upon the final hearing of the cause.    On the contrary, to adopt the language of the court in Georgia v. Brailsford, 2 Dall. 402, 'a probable right, and a probable danger that such right will be defeated, without the special interposition of the court,' is all that need be shown as a basis for such an order.    See, also, Blount v. Société Anonyme du Filtre Chamberland Système Pasteur, 3 C. C. A. 455, 53 Fed. 98, and cases therein cited."    Southern Pac. Co. v. Earl, 27 C. C. A. 185, 82 Fed. 691.    Under these circumstances, the affirmative defenses set up by respondents cannot be considered as factors in determining this order to show cause.

Complainant's claims to an injunction are based upon the franchise alleged to have been granted by the terms of the order known as "Order No. 2,965 of the Board of Supervisors of the City and County of San Francisco," and in accordance with the provisions of an act of the legislature entitled an "Act providing for the sale of railroad and other franchises in municipalities and relative to granting of franchise," approved March 23, 1893.    St. Cal. 1893, p. 288.    The first section of this act reads:

"Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate railroads along or upon any public street or highway, or to exercise any other public privilege whatever hereafter proposed to be granted by the board of supervisors, common council, or other governing or legislative body of any county, city or county, city, town or district, within this state, shall be granted upon the conditions in the act provided, and not otherwise."

Respondents maintain that the franchise alleged to have been granted to complainant is invalid, because it was not granted according to the provisions of the consolidation act of the city and county of San Francisco (St. Cal. 1856, p. 164), section 68 of which provides that every ordinance or resolution of the board of supervisors granting any privilege, or involving the lease or appropriation of public property or the expenditure of public moneys (except for sums less than $500), must be published, with the ayes and nays, in a city daily newspaper for five successive days before the board take final action, and every such ordinance must be presented to the president of the board for his approval.    If he approve, he shall sign it; and, if not, he shall return it to the board, with suggestions in writing, within 10 days.    The board shall then enter the objections on the journals, and publish them in some city newspaper.    If at any stated meeting thereafter two-thirds of the board—changed to three-quarters (St. Cal. 1867–68, p. 702)—vote for such ordinance or resolution, it shall then, despite the objections of the president, become valid.    The consolidation act, it is argued by respondents, was not superseded by the act of 1893, and the franchise claimed by complainant should have been granted in accordance with its terms.    The act of 1893, however, provides very clearly that such franchises as are specified, and "any

other public privilege whatever hereafter proposed to be granted by the board of supervisors, * * * shall be granted upon the conditions in the act provided, and not otherwise." In the case of People v. Board of Sup'rs of Contra Costa Co., 122 Cal. 421, 55 Pac. 131, it was decided by the supreme court of this state that a franchise for the construction and maintenance of a wharf should have been granted under this act of 1893. The court said, speaking of the act quoted above:

"This language is broad in its terms. It is difficult to imagine language broader in its significance, and more explicit upon the subject with which the act is dealing. It includes the franchise here before us."

And again:

"It is insisted that the board made a grant of the franchise under certain provisions of the Political Code, and therefore it is claimed that the act of the legislature passed in 1893 cannot furnish a test upon which to base a decision as to an exercise or nonexercise of judicial function on the part of the board in granting the franchise. This position cannot be maintained. This franchise should have been granted by the supervisors under the provisions of the act of 1893."

In face of this decision of the supreme court, respondents' contention in regard to the invalidity of order No. 2,965, as based solely upon the act of 1893, cannot be sustained.

In the constitution of 1849 it was provided, in article 11, § 5:

"That the legislature shall have power to provide for the election of a board of supervisors in each county, and these supervisors shall jointly and individually perform such duties as may be prescribed by law."

By the act of April 25, 1863 (St. Cal. 1863, p. 540), it was provided that:

"The board of supervisors of the city and county of San Francisco shall have power, by regulation or order; * * * to authorize and direct the summary abatement of nuisances; to make all regulations which may be necessary or expedient for the preservation of the public health and the prevention of contagious diseases; to provide, by regulation, for the prevention and summary removal of all nuisances and obstructions in the streets, alleys, highways, and public grounds of said city and county."

And in the constitution of 1879 it was provided, in article 11, § 11, that:

"Any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

In the case of Alpers v. City and County of San Francisco, 32 Fed. 503, Mr. Justice Field, in speaking of the power of the municipality of San Francisco to make provision for the removal of nuisances, said:

"There is no doubt that the contract between the plaintiff and the city and county of San Francisco is one within the competency of the municipality to make. It is within the power of all such bodies to provide for the health of their inhabitants by causing the removal from their limits of all dead animals not slain for human food, which otherwise would soon decay, and, by corrupting the air, engender disease. And provisions for such removal may be made by contract, as well as the performance of any other duty touching the health and comfort of the city; its authorities always preserving such control over the matter as to secure an observance of proper sanitary regulations.

* * * The contract in question does not appear to be open to any serious objection. None is alleged against its provisions. It imposes no burden upon the municipality. The removal of the dead animals is to be made without any expense to it. The compensation of the party making the removal is to be found in the uses to which the animals are or may be put. Their hides are converted into leather, from some of which shoes, from others gloves, are made. Of their bones, buttons or handles for knives may be manufactured; from their flesh and fat, various oils may be distilled for use in the arts. And, in case of horned animals, glue from their hoofs and combs from their horns may be made. Indeed, all parts of the animals may be put to some useful purpose. It requires, however, for such uses, special and somewhat expensive machinery, and also, it is said, the employment of hands trained to the business. All these facilities, the bill alleges, have been provided by the plaintiff."

Fertilizer Co. v. Lambert, 48 Fed. 458, was a suit brought by the assignees of the above Alpers to restrain respondents from infringing upon the exclusive right of complainant under the contract. Judge Hawley quoted the language of Justice Field in the Alpers Case, and gave the complainant the injunction asked for.

These authorities establish the doctrine that the board of supervisors has the power to provide for the removal of garbage and materials about to become nuisances. The decision of the board of supervisors that various enumerated materials are nuisances is conclusive of the fact.

In Ex parte Lacey, 108 Cal. 326, 41 Pac. 411, the petitioner had been convicted and imprisoned for violating a city ordinance of the city of Los Angeles which provided:

"No person or persons shall establish or conduct any steam shoddy machine, or steam carpet-beating machine, within one hundred feet of any church, school-house, residence or dwelling-house."

It was contended that the ordinance was void on the ground that it interfered with certain of the petitioner's inalienable rights, vouchsafed to him by the constitution. On the part of the city it was claimed that the passage and enforcement of the ordinance was but the exercise of a police power granted to it by the constitution of the state, in terms. The supreme court passed upon the question in controversy as follows:

"Conceding the business covered by the provisions of this ordinance not to constitute a nuisance per se, and to stand upon different grounds from powder factories, street obstructions, and the like, still the case is made no better for petitioner. This is not a question of nuisance, per se, and the power to regulate is in no way dependent upon such conditions. Indeed, as to nuisances per se, the general laws of the state are ample to deal with them. But the business here involved may properly be classed with livery stables, laundries, soap and glue factories, etc.,—a class of business undertakings in the conduct of which police and sanitary regulations are made to a greater or less degree by every city in the country. And in this class of cases it is no defense to the validity of regulation ordinances to say, 'I am committing no nuisance, and I insist upon being heard before a court or jury upon that question of fact.' In this class of cases a defendant has no such right. To the extent that it was material in creating a valid ordinance, we must assume that such question was decided by the municipal authorities, and decided against petitioner and all others similarly situated."

See, also, Ex parte Casinello, 62 Cal. 538; North Chicago City Ry Co. v. Town of Lake View, 105 Ill. 207.

The charge of 20 cents per cubic yard of garbage brought for re

duction to the crematory cannot be regarded as in the nature of a tax or assessment, or as a charge which the board of supervisors has no right to impose. This question was before the court in the case of Walker v. Jameson, 140 Ind. 591, 37 N. E. 402, and 39 N. E. 869. An ordinance was there under consideration providing that garbage should be collected only by the city's licensed agent, and that the parties producing garbage should place it in boxes for removal provided by such agent at their expense, and a contract empowering the contractor to collect such garbage and to charge a specified price per pound for its removal. It was contended that the provision for payment by the householder for the removal of the garbage was an assessment against him or his property, and, as the charter did not confer the power to make an assessment of this kind, it could not be made. The court said:

"Whatever else it may be, it is certainly not an assessment. It has not a single element of an assessment, for the reasons—First, that, except by the voluntary act of the householder, nothing is to be paid at all; second, no definite amount, in any event, is to be paid; third, nothing is made a charge upon the property. The whole arrangement is simply a provision by the ordinance—First, that garbage shall be collected and carted through the streets only by the licensed agent of the city; second, that parties producing the garbage needing to be thus carted away shall place the same in proper vessels, convenient for the removal by such agent; and, third, that such agent shall charge not exceeding the price named for removing the same. It is no more an assessment than is the provision of the ordinance fixing the rate of payment for gas or water, or street-car fare."

The law as established by the Slaughter-House Cases, 16 Wall. 36, is clearly decisive as to the question of the right of a municipality to impose a reasonable charge for the removal of a nuisance, and it is not claimed in the present case that the charge imposed by the ordinance is excessive. The court in that case said:

"Unless, therefore, it can be maintained that the exclusive privilege granted by this charter to the corporation is beyond the power of the legislature of Louisiana, there can be no just exception to the validity of the statute. And in this respect we are unable to see that these privileges are especially odious or objectionable. The duty imposed as a consideration for the privilege is well defined, and its enforcement well guarded. The prices or charges to be made by the company are limited by the statute, and we are not advised that they are, on the whole, exorbitant or unjust."

Respondents maintain that their acts do not injure the complainant; but, if complainant is entitled to the whole of the garbage created in the city and county of San Francisco,—and such is its claim,—it is obvious that the continual shipment of it must necessarily be injurious to its interests, and to a degree which would render an injunction pendente lite appropriate, under the circumstances. Let a preliminary injunction issue in accordance with the prayer of the bill of complaint.