CAMORS–McCONNELL CO. v. McCONNELL.*

(Circuit Court, S. D. Alabama. August 31, 1905.)

No. 238.

1. CONTRACTS—LEGALITY—RESTRAINT OF TRADE.
    An agreement, as incidental to the sale of property as a business, that the seller will not enter into a competing business, is valid and enforceable, notwithstanding it is in partial restraint of trade.
    [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 542–545, 555.]

2. SAME—ILLEGAL PURPOSE OF COVENANTEE.
    A contract by which a person sells his property and business good will to another cannot be repudiated on the ground that the purchaser acquired the property for the purpose of obtaining a monopoly of the business and in pursuance of an illegal combination in restraint of trade.
    [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 462–464. 547.]

3. SAME.
    In order to defeat a suit to enforce a contract on the ground that its enforcement is sought to aid and facilitate the carrying out of an illegal combination in restraint of trade, it must appear that the contract is directly connected with such unlawful purpose, and not merely collateral thereto.

4. EQUITY—MAXIMS—COMING INTO COURT WITH CLEAN HANDS.
    The maxim that one coming into a court of equity must come with clean hands applies only in case of fraud or misconduct on the part of

*Affirmed in Circuit Court of Appeals, see 140 Fed. 987.

complainant in regard to the transaction which is the subject of controversy.

[Ed. Note.—For cases in point, see vol. 19, Cent Dig. Equity, §§ 185–187.]

5. SPECIFIC PERFORMANCE—SALE OF BUSINESS—ENJOINING VIOLATION.

A court of equity will enjoin a defendant from violating a contract, clearly shown, by which he deliberately obligated himself for a valuable consideration not to engage in a certain business.

In Equity. On motion for preliminary injunction.

Howe, Spencer & Cocke and R. H. & N. R. Clarke, for complainant. Gregory L. & H. T. Smith, for defendant.

TOULMIN, District Judge. The averments as to the facts of this case, as set out in the bill of complaint, are substantially admitted by the defendant, with the exception that he denies that the contract of January 27, 1900 (Exhibit III to the answer), was made upon the terms set out in the contract of December 8, 1899 (Exhibit A to the bill), or that it had any reference to the provisions of said last-named contract, and that the provisions of article 5 therein were for the use, benefit, and protection of the complainant. And defendant avers that at the time the contract of December 8, 1899, was made it was understood that the United Fruit Company was the real party interested in said contract, and that the provisions of article 5 therein were made for its benefit and protection. It does not appear from anything now before the court that the United Fruit Company has ever availed itself of the provisions of article 5, referred to, that any consideration therefor ever passed or was intended to pass from it to the defendant, or that said company ever complained of the violations of said contract by the defendant. The United Fruit Company is not a party to this suit, but it appears that it is a stockholder of the Camors-McConnell Company. I think that on the bill, answer, and evidence, as now presented, there can be no doubt that the contract of December 8, 1899, was made in contemplation of the formation of the corporation of Camors-McConnell Company, and of its adoption by such corporation when organized, and that it was adopted by said corporation, and that the contract of January 27, 1900, transferring the property, effects, business, and good will of Camors, McConnell & Co., was made in pursuance of, and upon the terms set out in, said contract of December 8, 1899, and that the Camors-McConnell Company has performed the obligations thereby assumed by it, and is entitled to all the benefits accruing under said contracts.

But the defendant contends that the real purpose of the transaction in question was to suppress existing competition between the business conducted by the copartnership of Camors, McConnell & Co. and the United Fruit Company, and to combine said business with corporations and companies confederated together to monopolize and control the business of buying, importing, and selling fruit throughout the United States, and that the contract sought to be enforced is therefore illegal and void. The defendant further contends that the com-

plainant and the United Fruit Company are conducting their business in violation of the laws of the United States, and that at the time the contract involved in this suit was made and entered into it was for the purpose of aiding and facilitating the United Fruit Company and the Camors-McConnell Company and other companies in combination with them in conducting their business in violation of the laws of the United States, and that said contract was made in restraint of trade and commerce among the several states and with foreign nations, and for the purpose of forming and maintaining a combination in the form of a trust, and for that reason it is illegal and not enforceable. The covenant here sought to be enforced is that wherein the defendant agreed that he would not, "either individually or by or through a corporation, jointly or severally, directly or indirectly, engage in the growing or importing or selling of tropical fruits, or any other business, directly or indirectly, in competition with the new corporation," the Camors-McConnell Company. The test of the legality and validity of this covenant is whether the main contract is legal. If the contract is illegal, affirmative relief against it will not be granted. No court will lend its assistance in any way towards carrying out the terms of an illegal contract. Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Harriman v. Northern Securities Co., 197 U. S. 244, 25 Sup. Ct. 493, 49 L. Ed. 739.

A contract may, in a variety of ways, affect interstate commerce, and yet be entirely valid, because the interference produced by the contract is not direct. The fact that trade and commerce might be indirectly affected is not sufficient. The effect must be direct and proximate. Hopkins v. U. S., 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290; U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; Northern Securities Co. v. U. S., 193 U. S. 198, 24 Sup. Ct. 436, 48 L. Ed. 679. The indirect effect of the contract under consideration might be to enchance the price of tropical fruit, but the contract itself would not directly or necessarily for that reason be in restraint of interstate trade or commerce. While it might tend to restrain such trade, the restraint would be an indirect result. In the sale of a going business or concern, with the good will attached, where, as ancillary and incident thereto, the seller enters into a covenant with the buyer that he would not compete with him in any way as to diminish the value of the property or business sold, although such covenant may be in partial restraint of trade, it should be upheld and enforced. Harrison v. Glucose Sugar Refining Co., 116 Fed. 307, 53 C. C. A. 484, 58 L. R. A. 915; Nat. Enameling & Stamping Co. v. Haberman (C. C.) 120 Fed. 415. In U. S. v. Addyston P. & S. Co., 85 Fed. 281, 29 C. C. A. 141, 46 L. R. A. 122, the court said:

"Covenants in partial restraint of trade are generally upheld as valid when they are agreements by the seller of property or business not to compete with the buyer in such way as to derogate from the value of the property or business sold."

An agreement, as incidental to a sale of property as a business, that the seller would not enter into a competing business, is valid, notwith-

standing it is in restraint of trade to that extent. A. Booth & Co. v. Davis (C. C.) 127 Fed. 875; S. Jarvis Adams Co. v. Knapp, 121 Fed. 34, 58 C. C. A. 1; U. S. v. Addyston P. & S. Co., supra; Id., 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136. The sale and transfer by a person of his property and good will to another cannot be repudiated on the ground that the purchaser acquired the property for the purpose of obtaining a monopoly of the business, and in pursuance of an illegal combination in restraint of trade. Metcalf v. Am. School Furniture Co. (C C.) 122 Fed. 115. In Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464, the court said:

"We are not aware of any rule of law which makes the motive of the covenantee the test of the validity of such a contract. On the contrary, we suppose a party may legally purchase the trade and business of another for the very purpose of preventing competition, and the validity of the contract, if supported by a consideration, will depend upon its reasonableness as between the parties." Connolly v. Union Sewer Pipe Co., 184 U. S. 547, 22 Sup. Ct. 431, 46 L. Ed. 679; Knapp v. S. Jarvis Adams Co. (C. C. A.) 135 Fed. 1008.

In the case of an unlawful combination of the nature asserted here, the remedy is by well-recognized and direct proceedings. The fact, if it be a fact, that the complainant is one of an association or combination of corporations, which constitutes a monopoly, and that its general business is illegal, as one in restraint of trade, cannot be invoked collaterally to affect in any manner its independent contract obligations or rights. Yarborough's Adm'r v. Avant, 66 Ala. 526; Ware v. Curry, 67 Ala. 274; Johnston v. Smith's Adm'r, 70 Ala. 108. It is held that one who voluntarily and knowingly deals with the parties so combined cannot, on the one hand, take the benefit of his bargain, and, on the other, defend against the contract on the ground of the illegality of the combination. Harrison v. Glucose Sugar Refining Co., supra; Dennehy v. McNulta, 86 Fed. 825, 30 C. C. A. 422, 41 L. R. A. 609.

On the case as now presented, and assuming that there was a combination or agreement between the complainant and other corporations, which was prohibited by law as being in restraint of trade, I think that the contract in controversy between complainant and defendant was collateral to the said unlawful agreement or combination. Moreover, I do not think that the direct or necessary operation of said contract tends to restrain interstate or international trade or commerce, or to create a monoply therein. My opinion, therefore, is that there is nothing illegal in the consideration and performance of said contract, and that the defendant should not be permitted to repudiate it because the association of complainant with other corporations is illegal.

But it is urged on the part of the defendant that, even if the contract in controversy was, as a separate and independent contract, a lawful one, it was a part of an unlawful scheme to monopolize interstate trade and commerce in tropical fruit, and it thereby became unlawful. It is true there are some cases in which courts have held that even the fact that a contract is one for the sale of property or of business and good will has not saved its validity, if it was shown that it

was only a part of a plan to acquire all the property used in a business by one management with a view to establishing a monopoly. It was held that in those cases the actual intent to monopolize must appear. It is not deemed enough that the mere tendency of the provisions of the contract should be to restrain competition. U. S. v. Addyston P. & S. Co., supra. I think it will be found that the cases referred to were direct proceedings against the alleged monopolies wherein it was sought to enjoin them. There are no provisions in the contract here sought to be enforced which refer to the restrictions of trade, or to the regulation of the importation, sale, and prices of fruit, evidencing an intent to establish a monopoly in such trade.

In the case of Swift & Co. v. U. S., 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, a bill was filed by the United States to enjoin the defendants' commission of alleged violations of the law "to protect trade and commerce against unlawful restraint and monopolies." It charged a combination of a dominant proportion of the dealers in fresh meats throughout the United States to do and not to do certain specified things, with the intent to restrain competition among themselves, and to monopolize the supply and distribution of fresh meats throughout the United States. The case was submitted on bill and demurrer thereto. The court said it seemed to them "that this allegation of intent colored and applied to all the specific charges of the bill, and intended to allege successive elements of a single connected scheme." In the course of the opinion the court further said:

"The constituent elements are enough to give to the scheme a body. * * * Moreover, whatever we may think of them separately, when we take them as distinct charges, they are sufficient as elements of a scheme. It is suggested that the several acts charged are lawful, and that intent can make no difference. But they are bound together as the parts of a single plan. The plan may make the parts unlawful. The statute gives this proceeding against combinations in restraint of commerce among the states and against attempts to monopolize the same. Intent is almost essential to such combination, and is essential to such an attempt. Where acts are not sufficient in themselves to produce a result which the law seeks to prevent, for instance, the monopoly, * * * an intent to bring it to pass is necessary in order to produce a dangerous probability that will happen. But, when that intent and the consequent dangerous probability exist, the statute * * * directs itself against the dangerous probability, as well as against the completed result. The charge is not of a single agreement, but a course of conduct intended to be continued. Under the act it is the duty of the court, when applied to, to stop the conduct. * * * The most innocent and constitutionally protected of acts or omissions may be a step in a criminal plot, and, if it is a step in a plot, neither its innocence nor the Constitution is sufficient to prevent the punishment of the plot by law." 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518.

As I understand these expressions of the court, they amount simply to a declaration that conduct agreed upon to effect an unlawful object may be unlawful, and that the court, when applied to in a direct proceeding therefor, will stop such conduct by injunction, as well as punish, in proper criminal proceedings, the unlawful act when completed, notwithstanding it may have been accomplished by separate acts ever so innocent in themselves. Being steps in a criminal plot or scheme, bound together by a common intent, their innocence

is not sufficient to prevent the punishment of the completed act. I do not think the decision in the Swift Case has any application to this proceeding.

The defendant further claims that the complainant has entered into a combination with various other importers of fruit for the purpose of acquiring a monopoly in the importation and sale of the same, and that the contract in question was to aid and facilitate that purpose, and he insists that the court should for that reason refuse to enforce such contract, and he invokes the maxim that he who comes into a court of equity must do so with clean hands. The combination referred to may be an unlawful one, but the proposition that the defendant, while violating a contract made with the complainant, is entitled to defeat a suit brought to enforce such contract, because the complainant is carrying on its business in an unlawful manner as a monopoly, seems to me to be unwarranted. If the complainant had brought suit against the defendant for a breach of contract, or violation of its alleged rights founded upon the combination, then it might be pertinent to inquire into the character of the combination, and ascertain whether the court would enforce any rights growing out of it. Strait v. Harrow Co. (C. C.) 51 Fed. 819; Edison Electric Light Co. v. Sawyer-Man Electric Co., 53 Fed. 598, 3 C. C. A. 605. Whenever it is necessary for the plaintiff to prove an unlawful combination or agreement in order to recover, no recovery or relief can be had. A contract connected with and growing out of an illegal act cannot be enforced. McMullan v. Hoffman (C. C.) 69 Fed. 515. Such, in my opinion, is not the case at bar as now presented. "The rule that one coming into a court of equity must come with clean hands is confined to the conduct of the party in the matter before the court, and not to matters aliunde. Courts will not refuse redress to the suitor because his conduct in other matters, not then before the court, may not be blameless. It is enough, if the suitor shows he has acted justly, fairly, and legally in the subject-matter of the suit." "The iniquity must have been done in regard to the defendant himself, and must have been done in regard to the matter in litigation." Bonsack-Mach. Co. v. Smith (C. C.) 70 Fed. 386, and authorities therein cited; Liverpool & L. & G. Ins. Co. v. Clunie (C. C.) 88 Fed. 160; Knapp v. S. Jarvis Adams Co. (C. C. A.) 135 Fed. 1008.

The maxim of equity to which defendant refers contemplates some fraud or misconduct on the part of complainant in regard to the transaction which is the subject of controversy. "It must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought." Authorities supra; 1 Pom. Eq. Jur. 399. "It is well settled that the granting of a provisional injunction rests in the sound discretion of the trial court, and that it is not necessary that the court should, before granting it, be satisfied from the evidence before it that the plaintiff will certainly prevail upon the final hearing of the cause. On the contrary, 'a probable right and a probable danger that such right will be defeated,' without the special interposition of the court,' is all that need be shown as a

140 F.—27

basis for such an order." Sanitary Reduction Works v. California Reduction Co. (C. C.) 94 Fed. 693; Georgia v. Brailsford, 2 Dall. 402, 1 L. Ed. 433; 1 High on Inj. p. 4. "If there is one thing more than another which is essential to the trade and commerce of this country, it is the inviolability of contracts deliberately entered into, and to allow a person of mature age, and not imposed upon, to enter into a contract, to obtain the benefit of it, and then to repudiate it and the obligation which he has undertaken, is prima facie, at all events, contrary to the interests of any and every country." "In all such cases" as that now before the court "courts have uniformly enjoined the delinquent party from engaging in the business from which he has agreed to refrain, and from disclosing the secrets of the business which he has thus acquired." Harrison v. Glucose Sugar Refining Co., 116 Fed. 310, 53 C. C. A. 484, 58 L. R. A. 915, and authorities therein cited.

I am of opinion that the complainant is entitled to the injunction restraining H. L. McConnell from a breach of his contract with the complainant as set out in the bill of complaint, and an injunction will be issued in accordance with the prayer of said bill, except as to so much thereof as prays that defendant be enjoined from becoming or remaining a stockholder of the American Banana Company, as to which an injunction is now denied.

Let a decree be entered and a preliminary injunction issue in accordance with the foregoing opinion, on complainant's giving a good and sufficient bond in the sum of $1,000, conditioned as required by law and rules of court.