Mr. Justice BRADLEY
 

 delivered the opinion of the court.
 

 It is a well-settled rule of law that ah agreement in general restraint of .trade is illegal and void; but grn agreement
 
 *67
 
 which operates merely in partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it.
 
 *
 
 In ordqr that it may not be unreasonable, •the restraint imposed must not he larger than is required for the necessary protection of the párty with whom the contract'is made.
 
 †
 
 A contract, even on good consideration, not to use a trade anywhere in England, is held void in that country, as being too general a restraint of trade; but a contract not to use a trade at a particular place, if it be founded on a good consideration, and be made for a proper and useful purpose, is valid.
 
 ‡
 
 Of course, a contract not to exercise a trade generally would be obuoxious to the rule, and would be void.
 

 The'application .of the rule is more difficult than a clear understanding of it. In this country especially, where State lines interpose, such a slight barrier to social and business intercourse, it'is often difficult to decide whether a contract not to exercise a trade in a particular State is, of is not, within the rule. It' has generally been held to be so, on the ground that it would compel a map thus bound to transfer his residence and allegiance to another State in order to pursue his avocation.
 
 §
 

 But this mode of applying the rule must be received with some caution. This country is substantially one country, especially in all matters of trade and business; and it is manifest that cases may arise -in which it would involve too narrow a view of the subject to condemn as invalid a contract not to carry on a particular business within a particular State. Suppose the case of two persons associated in business as partners, and engaged in a -manufacture by which they supply the country with a certain article, but the process of manufacture is a secret; and they agree to separate, and one of the ternis of their separation is, that one of the parties shall not sell the manufactured article in Massachu
 
 *68
 
 setts, where' the other resides'and carries on business; and that the latter shall not sell t-he'article in New York, where his associate is to reside and carry on business. Can there ,be any doubt that such an agreement would be valid ánd binding? Cases must be judged according to their-circumstances, and can only be rightly jpdged when the,reason and grounds of the rule are carefully considered.
 

 There are two principal grounds on which the, doctrine is founded, that a contract in restraint of trade is void as against public policy. One is, the injury to the public by being deprived of the restricted party’s industry; the other is, the injury to the party himself by being precluded from pursuing his occupation and thus being prevented'from supporting himself and his family. It is evident that both thes'e evils occur when the contract is general, not to pursue one’s trade at all, or not to pursue it in the entire realm or country. The country suffers the loss in -both cases; and the party is deprived of his occupation', or is obliged to expatriate himself in order to follow it. A contract that is open to such, grave objection is clearly against public policy. But if neither of these evils ensue, and if-the contract is founded on a valid' consideration and a reasonable ground of benefit to the other party, it is free from.objection, and may be enforced..
 

 In accordance-with these principles it is well settled that a' stipulation by a vendee, of any trade, business, or establishment, that the vendor shall' not exercise the same trade or business, or erect a similar establishment within a reasonable distance, so as not to interfere with the value of the trade,' business, or thing purchased, is reasonable and valid. In like manner a stipulation by the vendor of an article to be used in a business'or trade in which he is himself en"gaged, that.it shall not be used within a reasonable'region or distance, so as not.to interfere with his said business or trade, is also valid and binding. -. The point of difficulty, iii these cases is to determine what is a reasonable distance within which the prohibitory stipulation may lawfully have effect. And it is obvious, at first glance, that this must de
 
 *69
 
 pend upon the circumstances of the particular case; although, from the uncertain character of the subject,-much latitudé .must be allowed to the judgment and discretion of the parties.' It is clear that a stipulation that another shall not pursue his trade of employment at such a distance from the business of the person to be protected, as that it could not possibly affect or injure him, would be unreasonable and absurd. On the other han'd, a stipulation is unobjectionable and binding which imposes the restraint to only such an extent of territory as may be necessary \for the protection, of the party making the stipulation, provided it does not violate the two indispensable conditions, that, the other party be not prevented' from pursuing his calling, and that the country be not deprived of the benefit of his exertions.
 

 To apply these principles to the case before us: The California Steam Navigation Company, being engaged in the business of transportation on the rivers, bays, and waters-of California, was willing to sell one of their steamers to the Oregon Stedm Navigation Company, which was engaged in a similar business on the Columbia River and its tributaries, provided the latter company would agree that the steamer, should ^not be used in the California waters for the period óf ten years from the first day of May, 1864. This stipulation was necessary to protect'the former company from in-' terference with its own business. It had no tendency to. destroy the usefulness of the steamer, and did not deprive the country of any industrial agency. The transaction merely-transferred the steamer from the employment of one company to that of another situated and doing business in another State. It involved no transfer of residence or allegiance on the part of the vendee in order to pursue its employment, nor any cessation or diminution of its business whatever. The presumption is' that the arrangement was mutually beneficial to both companies, and that it promoted the general interests of commerce.on the Pacific coast. Again, .the Oregon company were afterwards willing to dispose of thé same steamer to the defendants, who were engaged in'the like business of transportation in the waters of
 
 *70
 
 Puget Sound, Washington Territory, provided that the latter would agree'that the steamer should not be run or employed upon any of the routes of travel or rivers, bays, or waters of California, or the Columbia River and its tributaries, for the period of ten years from the first, day of May, 1867. This stipulation excluded the steamer from the territory covered by the former stipulation exacted by the California company, and. also from the territory occupied by tlm Oregon company itself. The latter portion of the stipulation stands on the same ground and reason as did the. first stipulation between the California and Oregon companies. The former portion was necessary in order that the Oregon company might faithfully keep its covenant with the California company. It is true that the stipulation in question covers a period pf time which extends three years beyond the period for which the Oregon company is boupd to the California company. The latter would expire oh the first of May, 1874, and the stipulation in question extends to the first of May, 1877. This extra period of three years, in reference to the waters of California, is not. necessary to the protection of the Oregon company. That company is under no obligation with regard to those three years. But the suit is brought and the breach is alleged for a portion of time during which the Oregon company is bound to protect the California company from the interference of said steamer. And the question arises whether the contract is so divisible in relation to the California portion that it can stand 'for the seven years for which the Oregon company is bound, though it be void as to the remaining three years. We think it is so divisible. It is laid down by Chitty as the result of the cases, and his authorities support the statement, “ that agreements in restraint of trade, whether under seal or not, are divisible; and, accordingly, it has been held that when such an agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is.void as being in restraint of trade, whilst the .other is not, the court will give effect to the latter, and will not hold the agreement to be void altogether.” The cases cited in support of this propo
 
 *71
 
 sition are
 
 Chesman et ux.
 
 v.
 
 Nainby
 

 *
 

 Wood
 
 v. Benson,
 
 †
 

 Mallan
 
 v.
 
 May,
 

 ‡
 

 Price
 
 v.
 
 Green,
 

 §
 

 Nicholls
 
 v. Stretton.
 
 ||
 
 In
 
 Price
 
 v.
 
 Green
 
 the contract was not to exercise the trade of a per-' fnmer in London, or within six hundred miles thereof; and it was held divisible and good for London only. This case was carried'through all the courts. In
 
 Nicholls
 
 v.
 
 Stretton
 
 the stipulation was that an attorney’s apprentice, who was to serve five years, should not, after his term expired, be concerned'as attorney for any persons who had, previous to the expiration of. said apprenticeship, been a client of the attorney with whom.the contract was made,,or who should' at any time thereafter become his client. It was strenuously and fully argued that whilst the contract might have been good as to past clients it was certainly not good .as to future ones, and being an entire contract, the whole was bad. But the court followed the previous decision of the Exchequer Chamber in
 
 Price
 
 v.
 
 Green,
 
 held the contract divisible, and sustained the action. We' see no reason why this principle-should not be followed in the present case. The line of division between the period which is properly covered by the restriction and that which is not so, is clearly defined and'easily drawn. ltd? subject to no confusion or uncertainty, and the court can have no difficulty in _applying it.
 

 Regarding this objection, therefore, as removed, the covenant made by the defendant seems to stand on the same ground as that made by the plaintiffs with the California company. The same observations maybe made with.reference to it. The public was not injured by being deprived of any of the business enterprise of the country. The vendees did not incapacitate themselves from carrying on business just as they had previously done, and in the same locality. - Their business was rather facilitated by the arrangement. Finally, the stipulation, it will be presumed, was founded on a valuable consideration in its influence upon the.price paid for the steamer; its object and purpose was.
 
 *72
 
 simply to protect the vendors, and if wp except the three years before considered in its «relation to California, its restraining effect extended no farther than was necessary for their protection.
 

 We are unable, therefore, to see anything in the contract, so far as it is now in question, which militates against public policy.
 

 There are no other points adverted to which demand the serious consideration of the court.
 

 Judgment reversed, and the case remanded to be proceeded in
 

 According to law.
 

 Dissenting, Justices CLIFFORD, SW.AYNE, and DAVIS.
 

 *
 

 Chitty on Contraets, 576, 8th American edition.
 

 †
 

 Ib.; Tindal, C. J., in Horner v. Graves, 7 Bingham, 743.
 

 ‡
 

 2 Williams’s Saunders, 156, note 1.
 

 §
 

 Taylor v. Blanchard, 13 Allen, 375; Dunlop v. Gregory, 6 Selden, 241.
 

 *
 

 2 Strange, 739.
 

 †
 

 2 Crompton & Jervis, 94.
 

 ‡
 

 11 Meeson & Welsby, 653.
 

 §
 

 16 Id. 346.
 

 ||
 

 10 Queen’s Bench, 346.