CARTER et al. v. ALLING et al.

(*Circuit Court, N. D. Illinois.* June 30, 1890.)

CONTRACT—VALIDITY—RESTRAINT OF TRADE.
  A contract between a manufacturing corporation, whose business extends throughout the United States and Canada, and one of its traveling salesmen, who has been in its employ for several years, whereby he agrees not to enter the service of any business competitor of the corporation for three years after leaving its service, is valid.

In Equity.

*J. L. High*, for complainants.
*Cratty Bros. & Ashcraft*, for defendants.

BLODGETT, J. The bill in this case seeks an injunction against the defendant Alling, restraining him from entering into the employment of the other defendant, the L. H. Thomas Company, and for other relief. The material allegations of the bill, so far as necessary for the disposition of the case, are: That on the 2d day of January, 1888, and for many years prior thereto, complainants were and had been copartners doing business under the firm name and style of Carter, Dinsmore & Co., engaged in the business of manufacturing and selling inks and mucilage, having their manufactory and principal office in the city of Boston, in the state of Massachusetts, with depots or warehouses in the city of New York and the city of Chicago; that in the conduct of their business they had employed, and still employ, traveling agents, canvassers, and salesmen, to introduce and sell the products of their manufacture throughout the United States and Canada; that the inks so manufactured and sold by complainants have always been known to the trade and to the public under the name of "Carter's Inks;" and that under said name such inks, and the mucilage manufactured by the firm, have, by reason of their excellence, and through the means of such traveling men, canvassers, and salesmen, as well as by extensive advertising at large expense to complainants, become widely and favorably known throughout the United States and Canada, as well as in various foreign countries, whereby complainants have established a large and profitable business in the manufacture and sale of said products throughout the United States and Canada; that about the year 1881 the defendant Edward H. Alling entered into the employment of said firm as a general salesman, involving the duties of canvassing, and introducing samples to and soliciting the trade of customers, and in part of selling to the trade, and to the advertising departments of such business. It is further alleged that on the 2d day of January, 1888, the said Alling entered into a certain written agreement with complainants for a further employment by them, by which agreement Alling agreed to work for complainants in the traveling, canvassing, and advertising departments of their business, and to do work in such other departments as they might request, from January 1, 1888, to July 1, 1890, for which service complainants were to pay him as salary $200 per month during said two and a half years, and at the expiration of said two and a half years a further sum, calculated upon a percentage of the net profits of the firm for the entire period of such employment, over and above the amount of said monthly payments, complainants also to pay all of Alling's traveling expenses. It was also provided by the contract that either party might terminate the same by giving one month's notice in writing, provided the other failed to comply with all the terms and provisions therein expressed. Alling, in and by the contract, further covenanted that he would not, within three years from the termination of his employment by complainants, whenever that might be, travel, canvass, or advertise

v.43F.no.3—14

for, or otherwise assist any one engaged in, nor himself engage directly or indirectly in, any line of business carried on or contemplated at the time of the termination of his employment by the complainant, nor furnish information directly or indirectly to any one engaged or interested in any such line of business. He further agreed not to communicate during the continuance of said agreement, or at any time subsequently, any information relating to the secrets of the traveling, advertising, and canvassing departments, nor any knowledge or secrets which he then had or might from time to time acquire pertaining to the other departments of the business of said complainants, to any person not a member of complainants' firm, except as requested in writing by complainants; and in case of violation of said covenant the defendant Alling agreed to pay complainants or their legal successors the sum of $5,000 as liquidated damages, but such payment was not to release him from the obligations undertaken, or from liability for further breach thereof. And it was further provided that, in case of any termination whatever of said contract, the obligations of the defendant Alling, as expressed in the covenant just recited, should remain in full force. The bill further charges that the defendant Alling left the employment of complainants in the month of January, 1889, and that he soon thereafter entered into the employment of the defendant the L. H. Thomas Company, which is a corporation organized under the laws of the state of Illinois, for the purpose, among other things, of manufacturing and selling inks and mucilage; that its manufactory is located in the vicinity of the city of Chicago, and its principal office is in the city of Chicago; and that the business of the said L. H. Thomas Company is of the same nature with that of complainants, and is conducted in substantially the same manner,—by the employment of canvassers and traveling salesmen, and by advertising and selling its products throughout the country,—and that it is a competitor with complainant in such business. The bill also charges that the defendant the L. H. Thomas Company was fully advised at the time of employing Alling of his obligation to complainants under the agreement of January 2, 1888, and that complainants fear that in the course of his employment with said L. H. Thomas Company, Alling is communicating to and using for the benefit of said company the information which he has obtained as an employe of complainants' concern, and the methods of complainants' business, and will communicate to said company the trade secrets pertaining to complainants' business so acquired by him while in complainants' employ, and will avail himself of such trade secrets to promote the business and further the interests of said company as a competitor of complainants, to the great and irreparable injury of complainants. The bill prays an injunction restraining Alling, for a period of three years from the termination of his employment with complainants, from traveling, canvassing for, and otherwise assisting the L. H. Thomas Company, or any other corporations or persons engaged in, or from himself engaging directly or indirectly in, the business of manufacturing or selling inks, writing fluids, and mucilage, and from furnishing any information, directly or indirectly,

to the L. H. Thomas Company, and to any other person or corporation engaged in or interested in such business, or from communicating directly or indirectly to any such person or corporation any information relating to the secrets of the traveling, advertising, or canvassing departments of complainants' firm. And that the L. H. Thomas Company, its officers, agents, and employes, may also be enjoined and restrained for a like period from employing Alling to travel, canvass, or advertise for, and otherwise assist said company in the business of manufacturing and selling inks, writing fluids, and mucilage.

There is no dispute as to the facts in the case. It is conceded that complainants were manufacturers and sellers of inks, etc., as charged in their bill; that Alling entered into complainants' employ under this contract, and continued in their service, as a traveling salesman and canvasser and advertiser of their inks, up to about the 20th of January, 1889, at or about which time difficulties arose between said parties touching the manner in which Alling should conduct the business for complainants, and he was notified that complainants had discharged him; and that within a very short time after such discharge defendant Alling became connected with the said L. H. Thomas Company as its president, taking the general charge and management of its affairs, including the selling of its inks, mucilage, bluing, and writing fluids; and that the other officers of the L. H. Thomas Company were duly notified, at or before the time when Alling went into their employ in the capacity aforesaid, of his obligations under said contract to complainants.

The only defense seriously insisted upon in the case is that this contract is void as a contract in restraint of trade. There is no difference between counsel as to the tenor and scope of the earlier English doctrine upon the subject of contracts like that now under consideration. It was held that they were contrary to public policy and void; but, as the later cases came before the court, this doctrine was much relaxed, and the first modification of the doctrine was the recognition of the validity of contracts of this nature where the restraint was limited as to space or time, and reasonable in its nature, and the reported cases are abundant in which an undertaking by one person not to carry on a given business within a limited area and within a fixed period of time has been sustained, and a breach of the undertaking enjoined, in a court of equity. In later years a further relaxation of the old rule has grown up both in England and America, and the courts have repeatedly recognized the validity of contracts in restraint of trade throughout an entire state or country, where such restraint was not unreasonable, in view of the nature and extent of the business of the covenantee. In *Machine Co.* v. *Morse*, 103 Mass. 73, where the defendant had conveyed to the plaintiff certain patents for improvements in twist drills and collets, with an agreement to use his best efforts to perfect improvements in the business, and to do no act that might injure complainant or its business, and that he would at no time aid, assist, or encourage in any manner any competition against the same, he agreeing to serve as superintendent of complainant for three years, performing all such duties as should be assigned to

him, and the defendant having left the employment of complainant and gone into the employ of the competitor of complainant in the same business, an injunction restraining defendant from violating his covenant was allowed by the court, although it was there urged strenuously that the covenant sought to be enforced was in restraint of trade, and contrary to public policy, and void; the court saying:

"The language of the contract implies that when the plaintiffs joined the defendant in his new business they had confidence in his mechanical skill and ingenuity, and intended to avail themselves of it for the benefit of the business in which he induced them to embark, and that it was a material part of the consideration for which they paid him so considerable a sum and invested their capital. It was not in restraint of trade nor contrary to public policy that the defendant should contract to render to the plaintiffs his exclusive services in this respect. This part of the contract he is alleged to have violated."

In *Whittaker* v. *Howe*, 3 Beav. 383, complainant had purchased the interest of the defendant, Howe, in the business of a firm of attorneys for £5,000, the defendant agreeing that he would not practice as a solicitor or attorney in any part of Great Britain for the space of 20 years without Whittaker's consent. The defendant resumed practice as an attorney in England within the period of 20 years after the purchase, and a bill was filed to enjoin him from practicing or in any manner carrying on business as a solicitor or attorney in any part of Great Britain. The injunction was granted as prayed, Lord LANGDALE, master of the rolls, saying:

"The question, therefore, is whether the restraint ought to be considered as reasonable in this particular case. The business is that of an attorney and solicitor, which to a large extent may be carried on by correspondence or by agents, and as to which it has already been decided that a restraint of practice within a distance of 150 miles was not an unreasonable restraint. * * * Agreeing with the court of common pleas that in such cases 'no certain, precise boundary can be laid down within which the restraint would be reasonable, and beyond which excessive,' having regard to the nature of the profession, to the limitation of time, and to the decision that a distance of 150 miles does not describe an unreasonable boundary, I must say as Lord KENYON said in *Davis* v. *Mason*, [5 Term R. 118:] 'I do not see that the limits are necessarily unreasonable, nor do I know how to draw the line.' At present, therefore, I cannot come to the conclusion that this agreement is void; and I do not think that this court can refuse to grant an injunction to restrain the violation of a contract or covenant because there may be some part of the agreement which the court could not compel the defendant specifically to perform."

In *Rousillon* v. *Rousillon*, 14 Ch. Div. 351, (1880,) the defendant was employed by a firm engaged in the wine business to travel for them in England, Scotland, and Holland, and in his agreement he covenanted as follows:

"I undertake not to represent any other champagne house for two years after having left you, if at any time I leave your house for any reason whatever, whether it be on your part or on my own. I also undertake not to establish myself, nor to associate myself with other persons or houses, in the

champagne trade, for ten years, in case I should leave you as already mentioned above."

Plaintiffs having discontinued their business, defendant within a year thereafter started business as a retail wine merchant in London, selling champagne and other wines, whereupon complainants prayed an injunction to restrain defendant from carrying on the business of a champagne merchant for a period of 10 years from the time he left their employment. The injunction prayed for was granted, the court, by Mr. Justice FRY, saying:

"Now, what is the criterion by which the reasonableness of the contract is to be judged? I will take the law on that point from the language of Chief Justice TINDAL, in delivering the judgment of the court of exchequer chamber on appeal from the court of queen's bench in *Hitchcock* v. *Coker*, [6 Adol. & E. 438.] He said: ' We agree in the general principle adopted by the court that, where a restraint of a party from carrying on a trade is larger and wider than the protection of the party with whom the contract is made can possibly require, such restraint must be considered as unreasonable in law, and the contract which would enforce it must be therefore void.' That passage was adopted by Lord WENSLEYDALE, when a baron of the court of exchequer, in delivering judgment in *Ward* v. *Byrne*, [5 Mees. & W. 548, 561;] and therefore the rule so expressed is the authority of the courts of queen's bench, exchequer, and exchequer chamber. If, therefore, the extent of the restraint is not greater than can possibly be required for the protection of the plaintiff, it is not unreasonable. * * * But then it is said that over and above the rule that the contract shall be reasonable there exists another rule, namely, that the contract shall be limited as to space, and that this contract, being in its terms unlimited as to space, and therefore extending to the whole of England and Wales, must be void. Now, in the first place, let me consider whether such a rule would be reasonable. There are many trades which are carried on all over the kingdom, which by their very nature are extensive and widely diffused. There are others which from their nature and necessities are local."

*Match Co.* v. *Roeber*, 106 N. Y. 473, 13 N. E. Rep. 419, decided in 1887, is the latest reported case upon the subject that has been brought to my attention. In that case the defendant, who was a manufacturer of friction matches in the state of New York, with· a large business throughout the United States and territories, sold his business and goodwill to the complainant corporation, with a covenant that he would not at any time within 99 years engage in the manufacture or sale of friction matches, except as an employe of complainant, within any of the states or territories of the United States except Nevada and Montana. He subsequently entered into the employment of a rival company to manufacture matches in the state of New Jersey, and, on suit being brought by the complainant to obtain an injunction restraining his employment with a competitor, it was urged, among other things, that the covenant was void as against public policy, because it was in restraint of trade. The injunction was awarded, the court, in an exhaustive opinion, saying:

"Steam and electricity have, for the purposes of trade and commerce, almost annihilated distance, and the whole world is now a mart for the distribution of the products of industry. The great diffusion of wealth, and the

restless activity of mankind, striving to better their condition, has greatly en-larged the field of human enterprise, and created a vast number of new in-dustries, which give scope to ingenuity, and employment for capital and la-bor. The laws no longer favor the granting of exclusive privileges, and to a great extent business corporations are practically partnerships, and may be organized by any persons who desire to unite their capital or skill in business, leaving a free field to all others who desire, for the same or similar purposes, to clothe themselves with a corporate character. The tendency of recent ad-judications is marked in the direction of relaxing the rigor of the doctrine that all contracts in general restraint of trade are void, irrespective of special circumstances. Indeed, it has of late been denied that a hard and fast rule of that kind has ever been the law of England. * * * When the restraint is general, but at the same time is co-extensive only with the interest to be protected and with the benefit meant to be conferred, there seems to be no good reason why, as between the parties, the contract is not as reasonable as when the interest is partial, and there is a corresponding partial restraint. And is there any real public interest which necessarily condemns the one and not the other? It is an encouragement to industry and to enterprise in build-ing up a trade that a man shall be allowed to sell the good-will of the busi-ness and the fruits of his industry upon the best terms he can obtain. If his business extends over a continent, does public policy forbid his accompa-nying the sale with a stipulation for restraint co-extensive with the business which he sells?"

And in *Navigation Co.* v. *Winsor*, 20 Wall. 64, Mr. Justice BRADLEY, speaking for the court, said:

"It is a well-settled rule of law that an agreement in general restraint of trade is illegal and void; but an agreement which operates merely in partial restraint of trade is good, provided it be not unreasonable, and there be a consideration to support it. In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the necessary pro-tection of the party with whom the contract is made. * * * This coun-try is substantially one country, especially in all matters of trade and busi-ness; and it is manifest that cases may arise in which it would involve too narrow a view of the subject to condemn as invalid a contract not to carry on a particular business within a particular state."

Many more cases of similar import might be cited, but I deem it un-necessary to multiply quotations. It seems to me that the rule clearly deducible from all these authorities is that an employer has the right to bind an employe not to go into the employ of a competitor, for a rea-sonable time after his employment terminates, within the territory where the employer seeks his market; and whether such covenant is reasona-ble and binding is a judicial question which must depend in each case upon its peculiar facts and circumstances. It has been well said that trade has obliterated state lines. The modern agencies of commerce have enlarged the field for the manufacturer and salesman to, or even beyond, the limit of the continent; and to whatever extent a manufact-urer or dealer has by his energy and enterprise made a market for his wares, to that extent he has the right to protect his business from pirat-ical competition by contracts like the one under consideration. In the case now under consideration the complainants were manufacturers of inks and similar commodities, and their business extended throughout the entire United States and Canadas. The defendant Alling was em-

ployed to canvass for purchasers, and to advertise the products of complainants' business. Prior to making the contract now under consideration, he had been for several years employed in a similar capacity by the complainants, and it must be presumed that he had acquired an extensive knowledge, not only of the complainants' business methods, but of their trade secrets, and this knowledge he had acquired while under the pay of complainants, and acting for them. It does not, therefore, seem to me unreasonable that the complainants should exact from him a covenant that he would not reveal their trade secrets, and would not enter the employ of any competitor of complainants for the time specified in his covenant after his employment by complainants should terminate. In the wine dealer's case, just quoted, the restriction was for a term of ten years after the employment ceased, and the court held that, under the circumstances, not unreasonable. Here the restriction is for three years only, which, it seems to me, was entirely proper for defendant to agree to and for complainants to exact. A decree may therefore be entered for the complainants.