FISHERIES CO. v. LENNEN et al.

(Circuit Court, D. Connecticut. June 6, 1902.)

1. CONTRACTS—LEGALITY—AGREEMENT IN RESTRAINT OF TRADE.

 A contract by which sellers of property agreed as a condition of the sale that they would not become engaged or interested in the business of catching or manufacturing the products from certain classes of fish along the Atlantic seaboard, in competition with the business of the purchaser, for the term of 20 years, is not void as in restraint of trade and against public policy, nor on the ground that it is oppressive and unreasonable.

In Equity. On demurrer to bill.

Goodwin Stoddard, for complainant.
Perkins & Perkins and H. A. Hull, for defendants.

PLATT, District Judge. The essential facts in this case found in the complaint and admitted by the demurrer are these:

On or about the 21st day of February, 1898, James Lennen and Louis P. Allyn, both residents and citizens of Connecticut, did, simultaneously with the payment to them of the consideration in said contract shown, enter into a contract with the American Fisheries Com-

¶ 1. See Contracts, vol. 11, Cent. Dig. §§ 555, 558, 559.

pany, a New Jersey corporation, in which, among other things, it was provided substantially as follows:

"Now, therefore, in consideration of the premises and the sum of one dollar to each of us in hand paid by the said the American Fisheries Company, receipt of which is hereby acknowledged, we, the said James Lennen and Louis P. Allyn, each for ourselves, and not for one another, contract, covenant, and agree to and with the said the American Fisheries Company, its successors and assigns, that we will not, nor will either of us, be or become interested in, or connected with, any business other than that to be conducted by said the American Fisheries Company, its successors or assigns, in catching menhaden, herring, or other fish used in the manufacture of oil or scrap, nor will we, or either of us, either directly or indirectly, become interested in the business of manufacturing such or any fish into oil or guano, upon, along, or off the Atlantic seaboard, for a period of twenty (20) years from the 26th day of November, 1897; it being the intention of this agreement to bind ourselves, and each of us, firmly by these presents, not to enter into, or become directly or indirectly interested in, the business of catching or manufacturing any fish, when caught, into oil or guano during the period of twenty (20) years above mentioned."

On or about the 9th day of July, 1900, said American Fisheries Company assigned all the property and rights acquired under said agreement to the Fisheries Company, plaintiff herein, a corporation organized under the laws of the state of New Jersey, and located in said state.

I quote paragraphs 2, 3, and 4 of the demurrer.

"(2) That it does not appear by the said bill of complaint by what act or acts or in what way the respondents, James Lennen and Louis P. Allyn, or either of them, became connected with the corporation designated as the Menhaden Oil and Guano Company, as set forth in paragraph sixth of said bill of complaint, nor does it appear in any part of said bill of complaint how or by what act or acts said respondents, or either of them, became connected with said corporation.

"(3) That it does not appear in said bill of complaint that the respondents became so connected with the said corporation designated as the Menhaden Oil and Guano Company, as set out in paragraph sixth of said bill of complaint, that they can be joined in this bill in equity.

"(4) That it does not appear in said bill of complaint that said board of directors of said the American Fisheries Company had power or authority to sell or assign and transfer the agreement entered into between the respondents and said the American Fisheries Company, marked 'Exhibit B' and annexed to said bill of complaint, with all the rights of complaint under said agreement."

The causes therein set forth are so trivial as to require no discussion.

The ground taken in paragraph 6 of the demurrer, to wit, that the provisions of the contract were obnoxious to the laws of the United States, commonly referred to as the "Sherman Anti-Trust Act," was practically abandoned at the argument.

I further quote paragraphs 1 and 5 of the demurrer:

"(1) That it appears by the complainant's own showing by the said bill of complaint that it is not entitled to the relief prayed by the bill of complaint against the respondents."

"(5) That the said contract and agreement so far as it provided that said respondents or either of them would not be or become interested in or connected with any business other than that to be conducted by said the American Fisheries Company, its successors or assigns, in catching menhaden, herring, or other fish used in the manufacture of oil or scrap, nor to directly or indirectly become interested in the business of manufacturing such or

any fish into oil or guano, upon, along, or off the Atlantic seaboard, for a period of twenty years from the 26th day of November, 1897, was and is illegal and void, because the same is in restraint of trade, and contrary to public policy, and is inequitable, unjust, oppressive, and unreasonable."

Paragraph 5, taken alone or in connection with paragraph 1, presents a more serious question, and one worthy of careful scrutiny.

The foundation principles which must apply to all questions relating to contracts which are alleged to be in restraint of trade, and therefore illegal and void, are found in the case of Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315. Mr. Justice Bradley states very concisely and clearly the general rule, as follows:

"It is a well-settled rule of law that an agreement in general restraint of trade is illegal and void; but an agreement which operates merely in partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it. In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the necessary protection of the party with whom the contract is made."

And the court a little later very truly says that "the application of the rule is more difficult than a clear understanding of it."

It certainly is not fair that the vendor should sell his property at a supposedly enhanced price by reason of his promise to refrain from prosecuting a like business within a restricted territory, and then, after enjoying the fruits of his sale, insist that the law is so that the contract cannot be enforced. The real question in such contentions must always be whether the bargain was a fair and reasonable one, under all the circumstances. The court in the Oregon Steam Nav. Co. Case further says:

"There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy,—one is the injury to the public by being deprived of the restricted party's industry; the other is the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family. It is evident that both these evils occur when the contract is general not to pursue one's trade at all, or not to pursue it in the entire realm or country. The country suffers the loss in both cases, and the party is deprived of his occupation, or is obliged to expatriate himself in order to follow it. A contract that is open to such grave objection is clearly against public policy. But if neither of these evils ensue, and if the contract is founded on a valid consideration and a reasonable ground of benefit to the other party, it is free from objection, and may be enforced."

Going back to the case before me, and applying these principles to the essential facts as I have outlined them, it appears that the contract complained of was reasonably adapted to protect the vendee in the enjoyment of the privileges for which he contracted and paid. In reaching this conclusion I assume that the "Atlantic seaboard" must refer to all the waters adjacent to the eastern coast of the United States. Any narrower construction than that would leave the defendants at liberty to enter into a like business under such conditions as would necessarily bring about direct and immediate competition with that of the vendee.

In the Trans-Missouri Freight Case, 166 U. S., we find on page 329, 17 Sup. Ct. 540, 41 L. Ed. 1007, that the majority opinion practically sanctions the position now taken by counsel for the com-

plainant; and when connected with the dissenting opinion of Mr. Justice White, where he carefully reviews the law as it is applied in these later days and conditions, to be found on pages 346–352, 166 U. S., page 540, 17 Sup. Ct., and page 1007, 41 L. Ed., seems to settle absolutely the proposition that contracts in "restraint of trade" must absolutely, or at least unreasonably, restrain trade, and that the agreement not to engage in a like business for a definite length of time, and within a restricted territory, entered into in aid of or collateral to the main sale of one's property, is a very proper and lawful thing to do, and, indeed, should be favored, because it enables the vendor to obtain the highest possible price for his property.

I have refrained from the discussion of a very long list of authorities, in this country and in England, cited by the complainant in support of the bill, for the reason that counsel for the defendants seem to pin their faith upon the Oregon Steam Nav. Co. Case, and, while admitting that in other jurisdictions the broader rule may prevail, insist upon it that the federal courts are constrained to follow the decision in that case. I am satisfied that my action herein accords with the views of the supreme court.

The demurrer is overruled, with costs to complainant.