### A. BOOTH & CO. v. DAVIS et al.

(Circuit Court, E. D. Michigan, S. D. January 19, 1904.)

1. **MONOPOLIES—ANTI-TRUST ACT—SCOPE.**

   The Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) has no application to a contract by which the stockholders of a corporation engaged in dealing in fish at different places, in consideration of the purchase of the business and good will of the company by another, agreed not to enter into competition with him in such business for the term of 10 years.

2. **SAME—MICHIGAN STATUTE.**

   The Michigan act of June 23, 1899 (Sess. Laws, 1899, p. 409, No. 255), to prevent trusts and monopolies, is prospective only in its operation, and does not affect a contract made prior to its passage which was valid when made.

3. **CONTRACT IN PARTIAL RESTRAINT OF TRADE—VALIDITY—SALE OF BUSINESS AND GOOD WILL.**

   A covenant by the stockholders of a corporation which sold its property, business, and good will, that, in consideration of such sale and as an inducement thereto, they would not directly or indirectly engage in the same or like kind of business as that carried on by the company in the same territory or in the immediate vicinity of such territory for 10 years after the sale, rests upon a good consideration and is lawful, and the right of the purchaser to enforce it cannot be affected by the question whether he has conducted the business lawfully since his purchase.

4. **SAME—SUIT TO ENFORCE—DEFENSES.**

   In a suit to enjoin a defendant from violating a contract by which for a valuable consideration he covenanted not to engage in business for himself or another in competition with that of complainant for a term of years, and to enjoin a codefendant from employing his services in a competing business, it is no defense that his codefendant hired him in ignorance of the contract, and will suffer damage if deprived of his services.

In Equity. On motion for preliminary injunction.

Chas. S. Thornton and Henry M. Duffield, for complainant.

Fred A. Baker and E. E. Kane, for defendants.

SWAN, District Judge. In this cause the motion to vacate the restraining order issued herein and the motion for a preliminary order was continued until the further order of the court. The main defense to the bill presented, it was then thought, a question to be determined upon plenary proofs rather than upon affidavits. In the expectation that the taking of proofs, then in progress, would obviate the labor of

¶ 3. Validity of monopolistic contracts as affected by public policy, see notes to Chicago, M. & St. P. Ry. Co. v. Wabash, St. L. & P. Ry. Co., 9 C. C. A. 666; Cravens v. Carter-Crume Co., 34 C. C. A. 486.

See Contracts, vol. 11, Cent. Dig. § 555.

digesting the many voluminous affidavits submitted upon the hearing of the motion for injunction, and reviewing upon the proofs and facts in issue, the formal disposition of that motion was postponed with that end in view. The taking of the testimony, however, has been extended by stipulations of the parties, and is not completed. The defendants now urge that their interests will suffer injury by deferring decision until the completion of the proofs. To avert that result, and to facilitate the review of this matter, the conclusions here reached are founded upon the affidavits filed, notwithstanding the unsatisfactory nature of such data compared with plenary proofs.

The bill is filed to restrain the defendant Davis from a breach of his contract hereinafter set forth, which contract, it is claimed by complainant, was and is a part of the consideration for the purchase by complainant of the property and good will of the Davis Fresh & Salt Fish Company, a corporation organized under and by virtue of the laws of the state of Michigan, and transacting a general fish business, and also engaged in buying, catching, producing, and selling salt and fresh fish. The company had its principal office in the city of Detroit, in said state. It also carried on business at Cleveland, Columbus, and Dayton, Ohio; Louisville, Ky.; Nashville, Tenn.; St. Louis and Kansas City, Mo.; Buffalo and New York City, in the state of New York; Grand Rapids, Jackson, East Saginaw, Lansing, Port Huron, and Detroit, Mich. The bill also seeks to have the Wolverine Fish Company, Limited, restrained from aiding Davis to violate his contract with complainant by employing said Davis in its business.

On August 14, 1898, in consideration of the sum of $17,473.14, the Davis Fresh & Salt Fish Company sold to William Vernon Booth, of Chicago, with the consent of all of its officers and stockholders, all of the goods, chattels, and property of every kind, nature, and description to it belonging, or in which it had any interest at that time, and, as part thereof, the good will of the business conducted by it at Detroit, and gave said Booth a bill of sale, with warranty of title, signed by defendant Davis, its president, and James T. Donaldson, its secretary, appended to which was the following, signed by said Davis:

"For and in consideration of one dollar and other valuable consideration, which I acknowledge, I hereby agree to perform the covenants and agreements above made and to be performed by the Davis Fresh & Salt Fish Company.
"Witness my hand and seal this 14th day of September, A. D. 1898."

Said Davis was a stockholder and the principal officer and manager of the vendor corporation, and apparently very desirous that the contract of sale should be completed, and he and other stockholders of the Davis Fresh & Salt Fish Company executed the following agreement:

"This instrument witnesseth, That William Vernon Booth has purchased the plant, business and good will of the business of the Davis Fresh & Salt Fish Company, and has paid therefor the sum of $17,473 14; that in making said transfer, and as an inducement to said William Vernon Booth to purchase said plant, business and good will and pay the sum aforesaid for the same, we have each agreed that we would not, and we now do agree, each for himself, jointly and severally with him, the said William Vernon Booth, his heirs and assigns, forever, that we will not, during the next ten years, in the territory or the immediate vicinity of the territory dealt in by our company, or operated in by ourselves or the agents or employés of the company, engage or in any

manner be interested in, either directly or indirectly, for ourselves or for others, the same or like kind or character of business as that heretofore conducted and now being carried on by said company, and that we will not, during the said period of ten (10) years, either directly or indirectly, be guilty of any act interfering with the business, its good will, its trade or its customers, or come in competition with the same; and we will not, jointly or severally, either in firms or corporations, or as individuals, or in any other way, directly or indirectly interfere with the said trade or business or do any act prejudicial to the same or any part thereof, or interfere with the persons employed therein; the meaning hereof being that the said William Vernon Booth is buying and paying for the good will of the business in the largest and fullest scope of the term; and that we will not, and each agrees that he will not, do anything to interfere with or injure the said business, but will during said period, lend his aid and best influence to the promotion and advancement of the same.

"In witness whereof we have hereunto subscribed our names and affixed our seals, jointly and severally, this first day of August, A. D. 1898.

"Edgar A. Davis.

"James T. Donaldson.

"Belle R. Harper.

"Ed. E. Kane.

"Belle B. Davis."

The consideration named in the instrument quoted above was paid on or about the 14th of September, 1898, to the Davis Fresh & Salt Fish Company, and by it distributed among its stockholders, defendant Davis receiving his full share thereof. The purchase and agreement recited above were made by said Booth, as agent for complainant, and a formal transfer was made by Booth to his principal of all the property, rights, and contracts involved in the transaction. The property was duly delivered. The complainant has entered into the possession thereof, and, the bill claims, is continuing such business in Detroit and the other places where the Davis Fresh & Salt Fish Company conducted its business before said sale. The bill seeks an injunction against Davis from violating his said agreement, and against the Wolverine Fish Company, Limited, and other defendants (except Edson, who was not served), from aiding and assisting Davis in the violation of his contract. The answer of the defendants, and the separate answer of defendant Davis, do not dispute the purchase of the property and good will of the Davis Fresh & Salt Fish Company. The defense is, first, that the contract is against public policy and in restraint of trade; that it is void under the provisions of the "Sherman Act," so-called (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and an act of the Legislature of the state of Michigan, entitled "An act to prevent trusts, monopolies and combinations of capital, skill and arts, and carrying out restraints in trade and commerce," etc., approved June 23, 1899 (Sess. Laws 1899, p. 409, No. 255).

The Sherman act has no bearing upon this controversy. Its purpose and scope is to avoid all contracts and combinations in the form of trusts or otherwise, or conspiracy in restraint of trade and commerce among the several states and with foreign nations. United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; United States v. Freight Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007. The business of the complainant is lawfully conducted by the sale of its commodities at the different points where the business acquired from the Davis Fresh & Salt Fish Company was carried on. It had noth-

ing to do with the interstate or foreign trade or commerce subject to congressional legislation. It produced and sold its goods at the several places where it did business, just as its vendor had and as any individual or corporation might do, and it had the same right to engage in such business on complying with the laws in the states in which it was carried on. The statute of Michigan which defendants have invoked as invalidating the contracts and business of the complainant acquired from the Davis Fresh & Salt Fish Company was not passed until a year after the purchase by complainant of that company's property and good will. It is in terms prospective, and cannot be invoked to defeat a contract lawful when made. Its first section defines a trust as—

"A combination of capital, skill or arts by two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them, for either, any or all of the following purposes:

"(1) To create and carry out restrictions in trade or commerce.

"(2) To limit or reduce the production, or increase or reduce the price of merchandise or any commodity.

"(3) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

"(4) To fix at any standard or figure whereby its price to the public or consumer shall be in any manner controlled or established any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this state."

Examination of the provisions of this act is convincing that it is directed only against combinations of persons, firms, partnerships, corporations, or associations of persons conspiring to co-operate in violation of its provisions, and that it contains nothing prohibitive of the acquisition by a person, persons, corporation, or association of the business or property of any person or association, natural or artificial. All such persons or associations may acquire property and carry on business at as many different places as their capital will warrant, and fix their own prices for their commodities, providing they do not, for that purpose and in its accomplishment, combine with other persons, firms, or organizations to effect any of the ends denounced by the statute. The prior Michigan statute of 1889, in existence at the time of the execution of the contracts under which complainant claims, was repealed by an act of 1899. There is grave question as to its validity, and that doubt probably prompted the act of 1899. The transaction by which the complainant acquired the title and interest for which it seeks protection in this cause was an out and out purchase of the vendor corporation's property and good will, and of the ancillary agreement of its stockholders, the breach of which agreement is the gravamen of the complainant's case. That such a transaction is lawful seems clear. In United States v. Addyston Pipe & Steel Co., 85 Fed. 271–281 et seq., 29 C. C. A. 141, 46 L. R. A. 122, Judge Taft considers the question here involved, and in a forcible opinion demonstrates that agreements by the seller of property or business not to compete with the buyer in such a way as to impair the business sold are perfectly valid. The opinion has so carefully and fully reviewed the authorities in support of this proposition as to exhaust the subject. The judgment of the Court of Appeals (except in a minor part having

no concern with the main question) was affirmed by the Supreme Court of the United States. 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136. It is therefore a matter of no concern whether or not the complainant is conducting its business in such a way as to reduce the cost of its commodity, and to increase its profits in that way, or by raising the price otherwise. The contract of purchase which it made with the Davis Fresh & Salt Fish Company, and its agreement with the defendant Davis and the other stockholders, by which they engage not to compete, individually or otherwise, directly or indirectly, with the complainant, was a contract wholly collateral to the scheme and method of its business and its rights and equities under the contract of sale; and the agreement with Davis and the other stockholders can be enforced with as much propriety as any other lawful contract or agreement into which it might enter. Atlanta v. Chattanooga F. & P. Works (C. C. A., Sixth Circuit, decided Dec. 8, 1903) 127 Fed. 23. It is well settled that an agreement which operates merely as a partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it. In Oregon Steamship Navigation Co. v. Winsor, 20 Wall. 67, 22 L. Ed. 315, Mr. Justice Bradley says:

"In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the protection of the party with whom the contract is made; * * * but a contract not to use a trade at a particular place, if it be founded upon a good consideration and be made for a good purpose, is valid. Of course, a contract not to exercise a trade generally would be obnoxious to the rule, and would be void."

Examining this agreement between complainant and Davis, it will be found that it has no feature which the law condemns. It is limited, as to time, for the 10 years ensuing its date; "and to the territory or immediate vicinity of the territory dealt in by the company, or operated in by ourselves or the agents or employés of the company." Its validity is fully sanctioned by the case of the Oregon Steamship Navigation Company v. Winsor, 20 Wall. 67, 22 L. Ed. 315. The execution of the contract is admitted by the defendants. It is no answer to its enforcement against Davis that he did not get the consideration he expected from the sale, because, as he alleges, complainant did not carry out an understanding subsequently made with him. The defense that the Davis Fresh & Salt Fish Company had no business and no good will, but its business at the time of the contract was carried on by Davis as trustee for the company, is unconscionable and without merit. The objection that the complainant is a trust and a monopoly is answered by the view taken of the statute of Michigan of 1899, and it is shown by the affidavits that the complainant's business in this line is but a small fraction of that done by other dealers in the same commodities in the territory covered by its operations, and that it is but one of several hundred dealers in that territory.

It is further claimed that the bill does not aver that the complainant has complied with the statute with regard to foreign corporations. The affidavits submitted by complainant completely negative this objection.

It is urged that the agreement with Davis and the other stockholders is not supported by any consideration. There is no force in this position.

It recites that the signers do agree, "as an inducement to said William Vernon Booth to purchase said plant, business and good will and pay the sum aforesaid ($17,473 14) for the same, we each have agreed that we would not, and we now do agree, each for himself, jointly and severally * * * that we will not during the next ten (10) years, in the territory or the immediate vicinity of the territory dealt in by our company, or operated in by ourselves or the agents or employés of the company, engage or in any manner be interested in, either directly or indirectly, for ourselves or for others, the same or like kind or character of business as that heretofore conducted and now being carried on by said company, its officers, agents, employés or assigns," etc. The signers of this instrument are estopped from denying want of consideration for its provisions. Their express acknowledgment in the instrument is that an inducement to the purchase at the time was their several contracts not to compete, directly or indirectly, as individuals or otherwise, with their vendee during the time and in the territory designated. The effect of such competition, it is obvious, would be to impair the value of the property and good will purchased, and, as has been said, a contract which would insure against this is not in restraint of trade, but valid. In Hendrick v. Lindsay, 93 U. S. 148, 23 L. Ed. 855, it is said:

"Damage to the promisee constitutes as good a consideration as benefit to the promisor. In Pillan v. Van Mierop, 3 Burr. 1663, the court say: 'Any damage or suspension of a right, or possibility of a loss, occasioned to the plaintiff by the promise of another, is a sufficient consideration for such promise, and will make it binding, although no actual benefit accrued to the party promising.' This rule is sustained by a long list of adjudged cases."

The restraint upon the defendants secured by this contract, it is clear beyond question from the terms of the contract itself, was regarded by both parties thereto as consideration. It does not lie in the mouth of Davis, when he has deliberately and for the purpose of inducing the complainant to pay the large sum of $17,473.14 for the business, which he now states was worthless, to deny that there was any consideration for his agreement. In fact, the denial of want of consideration, and Davis' objections to the contract that the Davis Fresh & Salt Fish Company had no business or good will at the time of the sale, are inconsistent in themselves, and compel the conclusion that, if the vendor corporation had no business, the sale of its property and the inventory upon which it was made was a fraud upon the purchaser, which discredits the claim of Davis that the agreement of himself and fellow stockholders was an independent transaction.

In behalf of the Wolverine Fish Company, Limited, it is urged that it had no knowledge of the agreement entered into by Davis to refrain, directly or indirectly, from engaging in the fish business for himself or others, and that to deprive it of his services and experience is a hardship. The equities of the case in favor of the complainant, in view of the facts, are much stronger than the consideration urged by the Wolverine Company against being enjoined from the employment of Davis in violation of his contract with complainant. Whatever injury results to the Wolverine Fish Company, Limited, from the enforcement of Davis' contract with complainant, is chargeable, not to the latter, but to Davis himself. If that company is injured, it is because

of Davis' willful breach of his contract with the complainant, and not by reason of any act or omission of the complainant. It is no answer to the enforcement of complainant's contract that Davis has broken it and entered into relations with others whereby the benefit of his experience and services will operate inevitably to the detriment of the complainant, although Davis' employer did not know of his self-imposed disability. To hold otherwise would sanction the doctrine that one entering into a like contract to that executed by Davis to the complainant might be absolved from his obligations under the contract by hiring his services to one ignorant of his disability. Such a construction of the letter and spirit of like engagements would make them entirely nugatory, and would be grossly unjust to the party who had paid in good faith a valuable consideration for the property and good will of a business which his vendors collectively and individually have covenanted not to impair or invade.

It results from these views that the complainant is entitled to the injunction restraining Davis from a breach of his contract with the complainant, and restraining the Wolverine Fish Company, Limited, from benefiting in any way by his services and experience in the fish business, as defined in the contract between complainant and Davis, and an injunction will be issued, according to the prayer of the bill, against Davis and the Wolverine Fish Company, Limited.