Pfeifer, J.,
dissenting.
{¶ 24} This case has been properly decided three separate times. The trial court had it right, the court of appeals had it right, and this court had it right the first time. I did not vote to accept jurisdiction, did not vote to reconsider the case, and remain convinced that this court should not have accepted jurisdiction or granted reconsideration. Even though I believe that this case is being incorrectly decided, the good news is that on remand, the lower courts are likely to reach the same sensible conclusions that they reached when they first encountered this case.
{¶ 25} The common law and judicial policy have long disfavored noncompete agreements. Starting with Dyer’s Case, Y.B. 2 Henry 5, fol. 5, pi. 26 (C.P.1414), noncompete agreements were prohibited. Since the early 18th century, however, many jurisdictions have allowed noncompete agreements to be enforced when they are reasonable. Mitchel v. Reynolds, 1 P.Wms. 181, 24 Eng.Rep. 347 (Q.B.1711); Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L.Rev. 625, 630 (1960). The Supreme Court of the United States stated:
It is a well-settled rule of law that an agreement in general restraint of trade is illegal and void; but an agreement which operates merely in partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it. In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the necessary protection of the party with whom the contract is made.
Oregon Steam Navigation Co. v. Winsor, 87 U.S. 64, 66-67, 20 Wall. 64, 22 L.Ed. 315 (1873).
{¶ 26} Noncompete agreements remain in disfavor and tend to be strictly construed against the employer. Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp., 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977); Grant *364 v. Carotek, Inc., 737 F.2d 410, 411-412 (4th Cir.1984) (applying Virginia law). “In Minnesota, employment noncompete agreements ‘are looked upon with disfavor, cautiously considered, and carefully scrutinized.’ ” Kallok v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn.1998), quoting Bennett v. Storz Broadcasting, 270 Minn. 525, 533, 134 N.W.2d 892 (1965). In certain respects, noncompete agreements are similar to indentured servitude. See Blake at 632 (common law disfavor of noncompete agreements was aimed at preventing employers from violating the underlying precepts of the apprenticeship system). In most respects, noncompete agreements are inimical to the free-enterprise system.
{¶ 27} The policy considerations that affect whether a particular noncompete agreement is reasonable and enforceable are explained by Michael J. Garrison and John T. Wendt:
As a matter of public policy, courts have traditionally looked upon agreements not to compete with disfavor. Such restrictions on employees were prohibited under the early English common law; however, over time, the common law prohibition against noncompete agreements loosened. The courts recognized that such agreements can be legitimate if they serve business interests other than the restriction of free trade. Thus, agreements not to compete ancillary to an employment relationship have been permitted, subject to a reasonableness requirement.
The common law reasonableness approach is an attempt to balance the conflicting interests of employers and employees as well as the societal interests in open and fair competition. Employers have a legitimate interest in preventing unfair competition through the misappropriation of business assets by former employees. On the other hand, employees have a countervailing interest in their own mobility and marketability. Society has interests in maintaining free and fair competition and in fostering a marketplace environment that encourages new ventures and innovation. There is a complementary public interest in preventing employers from using their superior bargaining position to unduly restrict labor markets. Given these competing interests, the common law approach allows employee noncompete agreements but imposes significant limits on restrictive covenants to assure that they are not overly burdensome to employees and harmful to the marketplace.
Under the common law approach, the employer must demonstrate a legitimate commercial reason for any agreement not to compete to ensure that the agreement is not a naked attempt to restrict free competition. Merely preventing competition from a former employee is not a sufficient justification for a noncompete agreement, even if the employee received *365 training or acquired knowledge of a particular trade during his employment. Employees are entitled to use the general skills and knowledge acquired during their employment in competition with their former employer. An employer must demonstrate “special circumstances” that make the agreement necessary to prevent some form of unfair competition.
Traditionally, the courts recognized two primary interests as legitimate justifications for a noncompete agreement: the employer’s interests in protecting the goodwill of the business and in protecting its trade secrets.
(Footnotes omitted.) Garrison & Wendt, The Evolving Law of Employee Non-compete Agreements: Recent Trends and an Alternative Policy Approach, 45 Am.Bus.L.J. 107, 114-116 (2008).
{¶ 28} In Ohio,
“[a] covenant not to compete which imposes reasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer’s legitimate interests. * * * [Such a] covenant is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.”
Rogers v. Runfola & Assoc., Inc., 57 Ohio St.3d 5, 8, 565 N.E.2d 540 (1991), quoting Raimonde v. Van Vlerah, 42 Ohio St.2d 21, 325 N.E.2d 544, paragraphs one and two of the syllabus.
{¶ 29} In this case, the noncompete agreement is an undue infringement on free enterprise. The agreement unfairly protects the employer from competition from its former employees. The employer’s trade secrets and customer list are already legitimately protected; the noncompete agreement does not protect them further. The principal purposes undergirding the enforcement of a noncompete agreement, both generally and in Ohio, are not applicable. Under the circumstances of this case, I conclude that the noncompete agreement is unreasonable and, therefore, that it should not be enforced. I would so conclude now, based on the record before us, without remanding the case.
{¶ 30} In Dyer’s Case, Y.B. 2 Henry 5, fol. 5, pi. 26, the court concluded that the noncompete agreement “is void because the condition is against the common law, and by God, if the plaintiff were present he should rot in gaeol till he paid a fine to the King.” That was justice.
*366 Katz, Teller, Brant & Hild, James F. McCarthy III, and Laura Hinegardner, for appellant.
Denlinger, Rosenthal & Greenberg, L.P.A., and Mark E. Lutz, for appellees.
Taft Stettinius &• Hollister, L.L.P., W. Stuart Dornette, John B. Nalbandian, and Ryan M. Bednarczuk, urging reconsideration for amici curiae Ohio Chamber of Commerce and Ohio Chemistry Technology Council.
Beckman Weil Shepardson, L.L.C., and Peter L. Cassady, urging reconsideration for amici curiae USI Holdings Corporation and USI Midwest, Inc.
Keating Muething & Klekamp and Robert E. Coletti, urging reconsideration for amicus curiae Cintas Corporation.
Michelle Lafferty, urging reconsideration for amicus curiae Hylant Group, Inc.
Manley Burke, L.P.A., and Timothy Burke, urging reconsideration for amici curiae Sean K. Mangan and John A. Barrett Jr.