IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 25, 2024 Session

## FAIRWAY CAPITAL PARTNERS, LLC v. TAMARYN GAUSE ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-20-1429    Jim Kyle, Chancellor

_____

### No. W2023-01136-COA-R3-CV
_____

The assignee of a contract for the sale of real property appeals the dismissal of its claims against a third party for civil conspiracy to commit breach of contract, tortious interference with a contractual relationship, and statutory inducement of breach of contract. The trial court granted summary judgment in favor of the defendant third party based on its conclusion that the third party had no notice of the contract at issue and did not act maliciously. We vacate the grant of summary judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Curtis A. Runger and Joy A. Robertson, Bartlett, Tennessee, and Donald K. Vowell, Knoxville, Tennessee, for the appellant, Fairway Capital Partners, LLC.

Ross M. Johnson, Nashville, Tennessee, for the appellee, Felicia Davis.

## OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

On or about January 20, 2020, Defendant Tamaryn Gause ("Ms. Gause" or "Seller") and Keller Investments ("Keller" or "Buyer") entered into a contract ("the Original Contract") for the sale of real property located in Memphis, Tennessee. The Original Contract provided a sales price of $130,000.00 and set the closing date for February 20,

2020. The Original Contract contained the following provision relevant to this appeal:

> **4. CLOSING DATE:** This transaction shall be closed on or before February 20, 2020[,] at the office of the attorney selected by the Buyer. Buyer shall have the right and option to extend this closing date for an additional 21 days by giving Seller notice via USPS or email prior to said closing date. This contract shall be extended automatically for up to one year from the date of this Agreement, if needed to allow Seller to clear the title.

On January 22, 2020, Keller recorded the Original Contract with the Shelby County Register of Deeds before assigning it to Plaintiff/Appellant Fairway Capital Partners, LLC ("Fairway Capital") on the following day.[1] The sale did not close as scheduled. According to Fairway Capital, however, the one-year extension on the Original Contract was triggered by Ms. Gause such that the time for closing was extended.[2]

Instead, on July 14, 2020, Ms. Gause entered into a second contract for the sale of the property with Defendant/Appellee Felicia Davis. The sales price on the second contract was $194,600.00. Ms. Davis retained Defendant/Appellee Regency Title & Escrow, LLC ("Regency Title") to handle the closing for the sale. According to Fairway Capital, it was contacted after Regency Title discovered the Original Contract; it informed Regency Title that it still intended to close on the property pursuant to the Original Contract and that if the sale between Ms. Gause and Fairway Capital did not occur, it would file suit.

The sale between Ms. Gause and Ms. Davis nevertheless occurred on August 27, 2020, and Ms. Gause executed a Warranty Deed conveying her interest in the property to Ms. Davis.

Fairway Capital thereafter filed a complaint against Ms. Gause, Ms. Davis, and Regency Title on November 12, 2021, in the Shelby County Chancery Court ("the trial court") alleging claims for breach of contract, civil conspiracy to commit breach of contract, tortious interference with a contractual relationship, statutory inducement of breach of contract, and unjust enrichment.[3] In essence, Fairway Capital alleged that Ms. Davis had knowledge of the Original Contract and maliciously induced Ms. Gause to breach it.

On January 8, 2021, Regency Title answered the complaint denying all liability as

---

[1] The assignment was not recorded.

[2] A central dispute in this case is obviously the enforceability of the Original Contract beyond the initial closing date.

[3] The claims of breach of contract and unjust enrichment were alleged against Ms. Gause only. The remaining claims were alleged against all three defendants.

to Fairway Capital's claims. Therein, Regency Title asserted that although it had knowledge of the existence of the Original Contract between Fairway Capital and Ms. Gause, the Original Contract was void as of February 20, 2020, for a failure to close by that date. On January 15, 2021, Ms. Davis filed an answer also denying liability.

On December 6, 2021, Ms. Davis filed a motion for summary judgement arguing that she could not have interfered with the Original Contract, given that it was unenforceable due to natural termination under its own terms. Moreover, Ms. Davis asserted that she had no knowledge of any enforceable prior contract between Keller and Ms. Gause because she was only informed of the Original Contract's existence on the closing date and was advised by Regency Title that the Original Contract was no longer valid. In support, Ms. Davis filed a statement of undisputed material facts, which relied primarily on her own sworn declaration.

On May 27, 2022, Fairway Capital filed a response in opposition to Ms. Davis's motion, asserting that its contract remained enforceable beyond the original closing date, due to the activation of the automatic one-year extension. In support of this claim, Fairway Capital cited the affidavit of Jack Keller, who signed the Original Contract on behalf of Keller and discussed the extension on closing with Ms. Gause in early February 2020. Fairway Capital further asserted that Ms. Davis had actual, constructive, and imputed notice of the Original Contract, citing Ms. Davis's own responses to requests for admission and email communications between Keller and Regency Title in August 2020.

What occurred next is somewhat difficult to discern from the record. On June 24, 2022, the trial court signed and filed an order granting Ms. Davis's motion for summary judgment. The certificate of service on the June 24 order is dated July 1, 2022, and the order was designated as final under Rule 54.02 of the Tennessee Rules of Civil Procedure. We will refer to this order as the July 1 Order. *See* Tenn. R. Civ. P. 58 (detailing when judgments become effective).

More than thirty days after the entry of this order, however, on September 9, 2022, the trial court entered a second order granting summary judgment to Ms. Davis.[4] We will refer to this as the September 9 Order. The September 9 Order contained slightly different legal conclusions but nevertheless granted judgment in favor of Ms. Davis and was also designated as final pursuant to Rule 54.02. Then, on October 7, 2022, the trial court entered an order striking the July 1 Order without explanation.[5]

On October 7, 2022, Fairway Capital filed a motion to alter or amend the trial court's September 9 Order. Ms. Davis responded by asking that Fairway Capital's motion be struck

---

[4] The order contains a certificate of service date of July 22, 2022. While this order is reflected in the technical record's table of contents, it only appears as an attachment to a later motion filed by Plaintiff.

[5] This order contains a certificate of service date of October 5, 2022.

because it did not comply with Rule 7.02 of the Tennessee Rules of Civil Procedure. Specifically, Ms. Davis asserted that the motion failed to state with particularity the grounds for relief. Months later, Fairway Capital filed a memorandum in support of its motion to alter or amend. Ms. Davis then filed a response in opposition to the motion to alter or amend, arguing that Fairway Capital was seeking to relitigate matters that had already been adjudicated.

After hearing oral arguments on May 5, 2023, the trial court entered an order denying the motion to alter or amend on July 11, 2023. The trial court reasoned that Fairway Capital sought to re-litigate issues previously adjudicated, presented previously unasserted legal arguments, and failed to establish a clear error of the law. Fairway Capital thereafter filed an appeal to this Court on August 10, 2023.

## II. ISSUES PRESENTED

Fairway Capital raises the following issues on appeal, which are taken, with slight alterations, from its brief:

1. Whether the trial court erred in granting Ms. Davis's motion for summary judgment because Fairway Capital presented evidence that created a genuine factual dispute as to the enforceability of the contract on August 27, 2020.
2. Whether the trial court erred in denying Fairway Capital's motion to alter or amend the order granting Ms. Davis's motion for summary judgment.

In addition to arguing that the trial court correctly granted summary judgment in her favor, Ms. Davis raises an additional issue: "[w]hether a motion that is nominally filed pursuant to Tenn. R. Civ. P. 59.04, but fails to comply with Tenn. R. Civ. P. 7.02, tolls the thirty-day period for the filing of a notice of appeal under Tenn. R. App. 4(a)."

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Under Rule 13(b) of the Tennessee Rules of Appellate Procedure, review will generally only extend to issues presented for review. Tenn. R. App. P. 13(b). This Court, however, must consider the issue of subject matter jurisdiction "whether or not presented for review[.]" *Id.*

This Court's subject matter jurisdiction is predicated on the filing of a timely notice of appeal. *Arfken & Assocs., P.A. v. Simpson Bridge Co.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002). "If the notice of appeal is not timely filed, the appellate court is required to dismiss the appeal." *Id.* Generally, a notice of appeal must be filed within thirty days after

- 4 -

the date of entry of the final judgment. *See* Tenn. R. App. P. 4. Here, in addition to Ms. Davis's subject matter jurisdiction argument, noted *supra*, our review reveals a second issue of jurisdiction that must be addressed: whether the trial court had subject matter jurisdiction to enter the September 9 Order.[6]

A brief review of the procedural history relative to this issue is helpful. First, the trial court entered the July 1 Order, granting Ms. Davis's motion for summary judgment. Although the order did not adjudicate all of the pending claims against all of the parties, it was designated as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. As such, the July 1 Order was a final judgment that began the thirty-day time period for appealing to this Court. However, neither party filed a notice of appeal within thirty days of the entry of this order or otherwise filed a timely motion in the trial court that tolled the time for taking an appeal. *See* Tenn. R. Civ. P. 59.01.

Instead, the parties agree that on September 9, 2022, the trial court entered a second order granting summary judgment to Ms. Davis and thereafter struck the July 1 Order by order of October 7, 2022. Within thirty days of the September 9 Order, Fairway Capital filed a motion to alter or amend, which was resolved by order of July 11, 2023. Less than thirty days later, Fairway Capital filed an appeal to this Court.

Fairway Capital's notice of appeal was only timely if its motion to alter or amend was timely:

> A *timely-filed* motion to alter or amend "will toll commencement of the thirty-day period for filing a notice of appeal until the trial court enters an order granting or denying the motion." [***Ball v. McDowell***, 288 S.W.3d 833, 836 (Tenn. 2009)] (citing Tenn. R. App. 4(b); ***Binkley v. Medling***, 117 S.W.3d 252, 255 (Tenn. 2003)) (emphasis added). "If a post-trial motion is not timely, the trial court lacks jurisdiction to rule on the motion." ***Id.*** (citing ***Binkley***, 117 S.W.3d at 255). "Similarly, if the notice of appeal is untimely, the Court of Appeals lacks subject matter jurisdiction over the appeal." ***Id.*** (citing Tenn. R. App. P. 2; ***Binkley***, 117 S.W.3d at 255).

***Hailey v. Wesley of the S., Inc.***, No. W2012-01629-COA-R3-CV, 2013 WL 6069446, at *5 (Tenn. Ct. App. Nov. 19, 2013). In turn, Fairway Capital's motion to alter or amend was only timely if the September 9 Order constitutes the final order of the trial court for purposes of this appeal. *See* ***Ball***, 288 S.W.3d at 836 ("The date of entry of a final judgment in a civil case triggers the commencement of the thirty-day period in which a party aggrieved by the final judgment must file either a post-trial motion or a notice of an appeal." (citing Tenn. R. Civ. P. 59.02; Tenn R. App. P. 4(a)–(b))); ***McAllister v. Rash***,

---

[6] Following briefing in this appeal, the parties were directed to file supplemental briefs on this issue. Both parties did so.

No. E2014-01283-COA-R3-CV, 2015 WL 3533679, at *4 (Tenn. Ct. App. June 5, 2015) ("Because Mr. McAllister did not file a timely appeal of the March 11, 2013 order [designated as final under Rule 54.02], nor seek to toll the expiration of the thirty-day time frame in any other way, this Court has no subject matter jurisdiction[.]").

In this case, however, the first order dismissing the claims against Ms. Davis was entered, at the latest, on July 1, 2022, and designated as final under Rule 54.02. And generally, the trial court only has thirty days to modify or set aside an otherwise final order. *See, e.g.*, Tenn. R. Civ. P. 59.04 (giving the parties thirty days to file a motion to alter or amend); Tenn. R. Civ. P. 59.05 (giving the trial court thirty days to alter or amend a judgment on its own initiative); ***Shipley v. Barnett***, 161 Tenn. 437, 32 S.W.2d 1022, 1022 (1930) ("Upon the expiration of thirty days, without the entry of any motion or order affecting it, the trial court was without power to alter it or set it aside."); ***Brewer v. State***, No. C.C.A. 1058, 1988 WL 97222, at *1 (Tenn. Crim. App. Sept. 21, 1988) ("The trial court did not have jurisdiction to set aside the judgment which had been of record more than 30 days."). *But see* Tenn. R. Civ. P. 60.02 (allowing a trial court to set aside a final judgment under the specific circumstances listed).

The record does not indicate that any motion to alter or amend was filed following the entry of the July 1 Order. The question, then, is whether the trial court had authority to enter the September 9 Order and strike its earlier order more than thirty days after its original entry. Based on the supplemental briefs of the parties, we conclude that it did.

In their supplemental briefs, the parties generally agree that the July 1 Order was entered by mistake by the trial court on or around July 1, 2022, and inexplicably back-dated to June 24, 2022, the date the motion for summary judgment was heard. Indeed, it appears that the parties had not finalized a written order on Ms. Davis's motion for summary judgment until well into July 2022, when the mistake was discovered.[7]

As Fairway Capital points out, this is exactly the type of mistake that Rule 60.02 of the Tennessee Rules of Civil Procedure was intended to correct. Rule 60.02 provides in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application;

---

[7] The parties had apparently drafted competing orders based on the oral ruling of the trial court.

- 6 -

or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

The Tennessee Supreme Court has also held that relief due to a mistake may be granted sua sponte: "[I]n connection with Rule 60.02(1) relief, [] when facts and circumstances indicating a necessity for such relief come to the attention of the Court, there is no necessity to await the filing of a formal motion. The trial court may Sua sponte grant the relief." *Jerkins v. McKinney*, 533 S.W.2d 275, 281 (Tenn. 1976).

Here, the parties agree that a mistake was made in the entry of the July 1 Order. Under Rule 60.02(1), the trial court had the authority to correct this mistake regardless of the fact that the July 1 Order had become final and that no formal motion to set aside that order was ever filed. Ms. Davis has not argued in this appeal that the trial court abused its discretion in granting relief under Rule 60.02. *See Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) ("Tennessee law is clear that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge."). Nor has she argued that the trial court's admittedly unexplained order striking the July 1 Order must have contained additional explanation for this Court to understand that the trial court was correcting a mistake in setting aside the July 1 Order. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) ("[W]hen construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated."). As such, we conclude that the trial court properly exercised its discretion to set aside the July 1 Order under Rule 60.02(1). The September 9 Order is therefore the relevant order for determining the timeliness of this appeal.

There is no dispute that Fairway Capital's motion to alter or amend was filed within thirty days of the entry of the September 9 Order, and that its notice of appeal was filed within thirty days of the denial of that motion. Fairway Capital therefore asserts that this Court has subject matter jurisdiction to adjudicate this appeal. In the posture of appellee, however, Ms. Davis argues that Fairway Capital's motion to alter or amend did not toll the time for taking an appeal because it did not comply with Rules 7.02 and 59 of the Tennessee Rules of Civil Procedure.

Rule 7.02 of the Tennessee Rules of Civil Procedure provides that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Likewise, this Court has held that post-judgment motions under Rule 59 "must specify the relief sought and must also set forth the grounds warranting that relief." *Davis v. Tenn. Dep't of Emp. Sec.*, 23 S.W.3d 304, 315 (Tenn. Ct. App. 1999). Parties are therefore required "to inform the court what relief they want and to give the court enough information to process the motion correctly." *Id.*

Ms. Davis asserts that Fairway Capital's motion to alter or amend was deficient and therefore a nullity that did not toll the time for taking an appeal. In particular, Ms. Davis points out that Fairway Capital's motion contains no law or facts, but merely a bare, conclusory statement that the trial court should amend its ruling without any argument in support thereof. A nearly identical motion and argument was raised to this Court in ***Grogan v. Uggla***, No. M2014-01961-COA-R3-CV, 2015 WL 5601995 (Tenn. Ct. App. Sept. 22, 2015), *aff'd*, 535 S.W.3d 864 (Tenn. 2017). As we explained,

> Tennessee courts seek to resolve cases on their merits, rather than on "'legal technicalities or procedural niceties.'" ***Doyle v. Frost***, 49 S.W.3d 853, 856 (Tenn. 2001) (quoting ***Karash v. Pigott***, 530 S.W.2d 775, 777 (Tenn. 1975)). Accordingly, we "do not generally apply specificity requirements strictly." ***Wright v. Serv. Merch. Co.***, No. 01-A-019003CV00116, 1991 WL 7805, at *2 (Tenn. Ct. App. Jan. 30, 1991). If a motion does not comply with Tennessee Rule of Civil Procedure 7, an appellate court has two options: (1) we may reverse an order based on the insufficient motion; or (2) "in the interests of judicial economy," consider the merits of the motion, if doing so would not be unfair to the other party. ***Harris v. Jain***, No. E2008-01506-COA-R3-CV, 2009 WL 2734083, at *3 (Tenn. Ct. App. Aug. 31, 2009). We are inclined to consider an insufficient motion, "as long as it is evident that the trial court understood the grounds of the motion, and the non-moving party knew or had notice of the grounds on which the motion was based." ***Wright***, 1991 WL 7805, at *2 (citations omitted). In this case, however, our review concerns whether we have jurisdiction to consider the appeal in light of an allegedly insufficient motion.

> Under these circumstances, we conclude that the motion to alter or amend was sufficient to extend the time for filing an appeal and that we do have jurisdiction. The trial court and [the opposing parties] were able to discern the grounds for the motion to alter or amend. The court requested a response and a hearing on the motion. [The opposing parties], although also objecting to the motion's lack of specificity, addressed the merits of the motion in their response. Our own review of the motion convinces us that the grounds can be discerned from the motion alone, although not without difficulty and the need to make some reasonable assumptions.

***Grogan***, 2015 WL 5601995, at *3. In ***Grogan***, other than citing two non-Tennessee legal authorities, without argument, and an attached memorandum of law,[8] the appellant's

---

[8] The ***Grogan*** court noted that "including the grounds in a separate memorandum of law does not comply with Rule 7.02(1)," but that the trial court and opposing parties may have looked to this document to discern the basis of the appellant's motion. ***Grogan***, 2015 WL 5601995, at *3 n.3.

motion to alter or amend stated nothing more than that the trial court should enter an order altering its prior decision. *See* Brief of Appellees, at \*9, ***Grogan***, 2015 WL 5601995 (No. M2014-01961-COA-R3-CV), 2015 WL 1826816.

Here, the question is not necessarily whether the trial court should have granted Fairway Capital relief based on the allegedly insufficient motion,[9] but whether the motion was sufficient to toll the time for taking an appeal. To hold that a trial court has no subject matter jurisdiction to consider a deficient motion would deprive the trial court of the very discretion that this Court has held applies in such a scenario.[10] In other words, if the trial court has discretion to consider a timely, but deficient motion, then the trial court cannot have been deprived of subject matter jurisdiction over it. *See **Largen v. City of Harriman***, No. E2017-01501-COA-R3-CV, 2018 WL 3458280, at \*6 (Tenn. Ct. App. July 17, 2018) ("[D]ismissal for lack of subject matter jurisdiction is not discretionary[.]"). In a similar vein, Tennessee courts have declined to hold that an improper motion to reconsider fails to toll the time for taking an appeal under Rule 59.04. *See generally **Tenn. Farmers Mut. Ins. Co. v. Farmer***, 970 S.W.2d 453, 455 (Tenn. 1998) (holding that while a motion to reconsider is not the type of motion that tolls the time for filing a notice of appeal, courts should avoid "an overly technical application of these rules" and consider such a motion under Rule 59.04).

Moreover, while we agree that Fairway Capital's motion does not meet the requirements of Rules 7.02 or 59, the motion in ***Grogan*** was little better. And the trial court in this case apparently felt that it had sufficient material in front of it to provide a ruling on the merits, despite Ms. Davis's motion to strike the motion on this very basis. At the time that the trial court eventually ruled on Fairway Capital's motion, Ms. Davis had been able to respond to the motion's merits. Given that we favor resolution on the merits, we conclude that the trial court did not abuse its discretion in treating Fairway Capital's motion as properly filed, despite its deficiencies. The motion was therefore sufficient to invoke the trial court's continuing jurisdiction and toll the time for filing a notice of appeal. Accordingly, Fairway Capital's notice of appeal was timely, and this Court has subject matter jurisdiction to consider this appeal. So we proceed to consider the issues raised by Fairway Capital.

## B. Summary Judgment

---

[9] Fairway Capital has raised that issue, but it is pretermitted by our ultimate decision in this case.

[10] Ms. Davis cites no Tennessee law that ruling that deficient motion to alter or amend was a nullity for purposes of tolling the time for taking an appeal. She cites only caselaw in which a motion to alter or amend was filed too late, *see **Chorost v. Chorost***, No. M2000-00251-COA-R3-CV, 2003 WL 21392065 (Tenn. Ct. App. June 17, 2003), and a Tennessee Supreme Court case holding that compliance with Rule 7.02 is "mandatory as a prerequisite to invoking the jurisdiction of the trial judge to exercise his discretion in granting or refusing the extraordinary relief of disturbing the finality of a judgment on any of the grounds authorized in T.R.C.P. 60.02(1)." ***Hopkins v. Hopkins***, 572 S.W.2d 639, 640 (Tenn. 1978). Fairway Capital was not seeking extraordinary relief under Rule 60.02 at this time.

The next question before us on appeal is whether the trial court erred in granting summary judgment to Ms. Davis. We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by* *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by* *Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the non-moving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the non-moving party must respond with specific facts showing that there is a genuine issue of material fact to be resolved at trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Brooks Cotton Co. v. Williams*, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (alteration in original) (quoting *Landry v. S. Cumberland Amoco*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

In this appeal, Fairway Capital argues that the trial court should not have dismissed its claims against Ms. Davis because there are genuine material factual disputes that remained unresolved. Here, the parties agree that regardless of how the claim against Ms. Davis is characterized, Fairway Capital was required to prove the following elements:

(1) that there was a legal contract; (2) that the wrongdoer had sufficient

knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach.

*TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). In the trial court, Ms. Davis asserted that the undisputed facts negated the required showing that there was an enforceable contract, that Ms. Davis had knowledge of same, or that Ms. Davis acted maliciously.

As an initial matter, Fairway Capital argues that the trial court did not grant summary judgment to Ms. Davis based on the enforceability of the Original Contract. We agree. Nothing in the trial court's order concludes that the Original Contract between Fairway Capital and Ms. Gause was either enforceable or unenforceable. This question therefore remains in dispute for purposes of this appeal.

Instead, the trial court concluded that no evidence was presented to demonstrate that Ms. Davis had sufficient knowledge that a contract still existed between Fairway Capital and Ms. Gause beyond the original closing date. Specifically, the trial court ruled that Fairway Capital failed to demonstrate this element because

[t]here is no evidence in the record demonstrating that Ms. Davis had knowledge of: (a) a written amendment to the Contract signed by both parties; (b) written notice from Plaintiff or Keller of a 21-day extension to the Contract; or (c) notice from Ms. Gause that she needed additional time to clear title on the Property.

Without this knowledge, the trial court further concluded that Fairway Capital failed to demonstrate that Ms. Davis acted maliciously. Thus, the relevant elements in this appeal are whether Ms. Davis had sufficient knowledge of the Original Contract and whether she acted maliciously. As the party seeking summary judgement, it was Ms. Davis's burden to either negate either of these elements or show that Fairway Capital could not prove them at trial. If Ms. Davis met that burden, it becomes Fairway Capital's burden to demonstrate a genuine dispute of fact on these issues that must be resolved at trial.

Ms. Davis frames the question on appeal as whether she had enough facts to place her on inquiry notice of the Original Contract. Inquiry notice occupies "a middle ground between constructive notice and actual notice[.]" *Blevins v. Johnson Cnty.*, 746 S.W.2d 678, 683 (Tenn. 1988). While some authorities characterize inquiry notice as a type of constructive notice, Tennessee courts have classified inquiry notice "as a variant of actual notice." *Id.* As the Tennessee Supreme Court explained:

"'The words "actual notice" do not always mean in law what in metaphysical

strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'" ***Texas Co. v. Aycock***, 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950) (citation omitted). Even a good faith failure to undertake the inquiry is no defense. ***Id.***[] Thus, "'[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.'" ***City Finance Co. v. Perry***, 195 Tenn. 81, 84, 257 S.W.2d 1, 2 (1953) (citation omitted).

***Blevins***, 746 S.W.2d at 683.

Here, it is undisputed that Ms. Davis had actual knowledge of the Original Contract between Fairway Capital and Ms. Gause, including the fact that it could be extended in multiple ways, such as if Ms. Gause needed additional time to obtain a clear title.[11] It is also undisputed, for purposes of summary judgment, that Ms. Gause contacted Keller in February 2020 invoking the clause in the Original Contract that extended the time to close on the property if Ms. Gause needed additional time to clear the title on the property.[12] Email communications in the record further demonstrate that Ms. Gause was leading Keller to believe that she was still working to close the sale on the Original Contract well into August 2020.[13] But according to Ms. Davis's declaration, she was not privy to any of the conversations between Ms. Gause and Keller.

What is undisputed, however, is that Ms. Davis retained Regency Title for the

---

[11] Specifically, in a request for admission propounded by Fairway Capital, Ms. Davis admitted that she was "aware of the existence of the contract between [Ms.] Gause and the Original Buyer on August 27, 2020."

[12] Specifically, Ms. Davis admitted the following undisputed fact: "[Ms.] Gause informed [] Keller in early February 2020 that she needed additional time to clear the title to the Property as was provided in the subject contract, but that she would close on the property once the issues were resolved." In its order denying the motion to alter or amend, however, the trial court appears to ignore this admission by finding that there was "no evidence in the record of such act(s) being taken" to extend the Original Contract. Of course, Ms. Davis maintains that this fact is irrelevant because Ms. Davis was not privy to the communications between Ms. Gause and Keller and had no communications with either of those parties prior to the closing.

[13] An August 19, 2020 email sent by Ms. Gause to Keller stated as follows:

Although I feel this is an effort by you to force me to sell my home to you and your company.

As I told you from the beginning, I must know the payoff balance to ensure there is no balance left for me to pay after the sale. I have requested the payoff several times form the mortgage company but yet to receive it. I assume that the Covid 19 pandemic has caused this enormous delay but I am at the mercy of my mortgage company. I hope you understand and consider this in your forcing a lawsuit against me. Please reconsider waiting as that is all I can do to prevent a later problem.

purposes of conducting a title search on the property. In the course of its investigation, Regency Title learned of and reached out to Keller concerning the Original Contract no later than August 20, 2020.[14] In response, the attorney representing Keller informed Regency Title that Keller maintained that its contract with Ms. Gause was still valid and that Ms. Gause would be in breach of the Original Contract if she went forward with the new transaction.[15] These communications, however, did not specifically mention that Keller was claiming that Ms. Gause triggered the one-year extension on the Original Contract for purposes of clearing up title issues.

Ms. Davis further submits that it is undisputed that she had no communication with either Keller or Fairway Capital concerning the Original Contract. Instead, she contends that Regency Title eventually informed her that the Original Contract was not a bar to her purchase of the property at the time of the closing. Specifically, in her affidavit, she testified that "[i]t was not until the actual closing that [Regency Title] informed me that Ms. Gause's contract with Keller existed, but had expired and that title for the Property was clear." She further asserts that she had no communication with Ms. Gause about the Original Contract. Fairway Capital responds that these facts fail to negate the element of notice for purposes of summary judgment. We agree that genuine disputes of material fact preclude summary judgment on this element.

Clearly, the undisputed facts establish that Ms. Davis had actual knowledge of the existence of the Original Contract.[16] Ms. Davis claims, however, that this knowledge was nullified when she was advised that the Original Contract expired when closing did not take place in February 2020. As previously discussed, the trial court did not resolve the dispute as to whether the Original Contract was still enforceable at the time of Ms. Davis's August 2020 closing. Still, the evidence demonstrates that Regency Title had actual notice

---

[14] In an August 21, 2020 email between Regency Title and Keller's attorney, the Regency Title employee stated that she had been corresponding with Keller and asked that the attorney provide a copy of a letter sent to Ms. Gause demanding that she close on the property. The email further stated that Regency Title "ha[s] a potential Closing with a New Buyer," but that Keller "Filed a Cloud on Title," and inquired as to whether other legal action had been filed against Ms. Gause.

[15] On the same day, the attorney responded that no further legal action had been taken, but that

> I anticipate that my office will be moving forward with a lawsuit for breach of contract and specific performance against Ms. Gause in the next week or so for what is a clear-cut, open and shut breach of contract for failure to close on her part.
>
> In my 17 years of practice, this breach is one of the most flagrant and obvious breaches imaginable devoid of any legal defenses.
>
> Any entity that would move forward with a closing on the property would be subject to claims as well.

[16] In addition, the recordation of the Original Contract provided constructive notice "to all the world[.]" See Tenn. Code Ann. § 66-26-102 ("All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration[.]").

that Fairway Capital was claiming that the Original Contract was still in effect prior to the closing date. Generally, the knowledge of an agent is imputed to its principal. ***Ray v. Tenn. Farmers Mut. Ins. Co.***, No. W1999-00698-COA-R3-CV, 2001 WL 91948, at \*3 (Tenn. Ct. App. Feb. 1, 2001) (citing ***Griffith Motors, Inc. v. Parker***, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982)) (noting some exceptions not present here). On the other hand, however, the communications between Keller and Regency Title do not indicate what basis that Keller was claiming an extension on the contract.

As a result, facts in the record both support and undermine a finding that Ms. Davis had "sufficient knowledge" for purposes of the claims in this case. ***TSC Indus.***, 743 S.W.2d at 173. Although Fairway Capital raised these facts in response to Ms. Davis's motion for summary judgment, the trial court largely did not address them in its order or consider their legal ramifications in any way. In Tennessee, whether a defendant had sufficient knowledge for purposes of a tort is generally characterized as a factual issue. *See generally* ***Tedder v. Raskin***, 728 S.W.2d 343, 349 (Tenn. Ct. App. 1987) (distinguishing legal issues with factual issues reserved for the trier of fact, including the "difficult to resolve" question of "what facts are sufficient to constitute notice"). Moreover, authorities outside our jurisdiction have grappled with similar facts to varying results. For example, courts have come to differing conclusions about whether something less than actual notice is sufficient for a claim of tortious interference. *Compare* ***Booth & Co. v. Davis***, 127 F. 875 (C.C.E.D. Mich. 1904) (imputing knowledge to the defendant corporation based on the actual knowledge of the contract by an executive thereof), *aff'd as modified*, 131 F. 31 (C.C.A. 6th Cir. 1904), *with* ***Gruen Indus., Inc. v. Biller***, 608 F.2d 274, 27 U.C.C. Rep. Serv. 798 (7th Cir. 1979) (holding that there was no liability for tortious interference unless the defendant had actual knowledge of the contract and intended to interfere with it, but holding that actual notice of the existence of a contract alone may require the defendant "to make such inquiry as would apprize him of the true facts" (citation omitted)). Authorities have also reached differing results as to whether advice that a contract was unenforceable serves as a defense to this tort. *Compare Restatement (Second) of Torts* § 766 (1979) ("If he knows those facts, he is subject to liability even though he is mistaken as to their legal significance and believes that the agreement is not legally binding or has a different legal effect from what it is judicially held to have."), *and* ***United Lab'ys, Inc. v. Kuykendall***, 322 N.C. 643, 663, 370 S.E.2d 375, 388 (N.C. 1988) (holding that a good-faith belief that a covenant is unenforceable is not a defense to tortious interference if the covenant is ultimately held enforceable), *with* ***Walker v. Waltham Hous. Auth.***, 44 F.3d 1042, 1048 (1st Cir. 1995) (holding that the defendant was not liable where it had been reliably informed that the contract had been terminated), *and* ***Fisher v. Parkview Props., Inc.***, 71 Wash. App. 468, 859 P.2d 77 (Div. 2 1993) (holding that because the plaintiff told defendant that the sale involving the third party had collapsed, the defendant did not interfere as he had no knowledge of a present contractual relationship between plaintiff and the third party), *as amended on denial of reconsideration*, (Nov. 22, 1993).

Thus, even to the extent that the parties may not dispute the facts, it is clear that the parties dispute the inferences to be drawn from the facts. As a result, the facts must be weighed to resolve this dispute. "Summary judgment motions, however, 'were never envisioned as substitutes for trials of disputed factual issues.'" ***CAO Holdings, Inc. v. Trost***, 333 S.W.3d 73, 82 (Tenn. 2010) (quoting ***Martin v. Norfolk S. Ry.***, 271 S.W.3d 76, 89 (Tenn. 2008) (Koch, J., concurring in part)). Summary judgment "should not replace a trial when disputed factual issues exist, because its purpose is not to weigh the evidence, to resolve factual disputes, or to draw inferences from the facts." ***Downs v. Bush***, 263 S.W.3d 812, 815 (Tenn. 2008) (emphasis added). As a result, "[a] summary judgment motion should be denied if there is any reasonable doubt regarding whether a genuine issue of material fact exists." ***CAO Holdings***, 333 S.W.3d at 82. This includes not only when material facts are disputed, but also "when more than one conclusion or inference can reasonably be drawn from the facts[.]" ***Id.*** Because more than one inference can be drawn from the facts presented, summary judgment as to whether Ms. Davis had sufficient knowledge of the Original Contract for purposes of Fairway Capital's claims was premature.[17]

The trial court also ruled that Ms. Davis negated or otherwise demonstrated that Fairway Capital could not prove that Ms. Davis acted maliciously. Like notice, "intent is often a question of fact[.]" ***HCTec Partners, LLC v. Crawford***, 676 S.W.3d 619, 642 (Tenn. Ct. App. 2022), *appeal dismissed* (Tenn. June 20, 2022). In the context of an inducement to breach a contract claim, however, "malice does not mean 'hatred, ill will or spite[,]'" but only a "willful violation of a known right." ***Id.*** (quoting ***Prime Co. v. Wilkinson & Snowden, Inc.***, No. W2003-00696-COA-R3-CV, 2004 WL 2218574, at *4 (Tenn. Ct. App. Sept. 30, 2004)).

In this case, the trial court's discussion of the malice element was tied only to its conclusion that Ms. Davis had no knowledge that the Original Contract was still in effect. As previously discussed, however, summary judgment was premature on that issue. As a result, the trial court's conclusion that Ms. Davis negated or otherwise demonstrated that Fairway Capital could not prove the malice element of its claims must also be vacated. Thus, the trial court's order dismissing Fairway Capital's claims against Ms. Davis are vacated, and this cause must be remanded to the trial court for further proceedings. All other issues are pretermitted.

## IV. CONCLUSION

The judgment of the Shelby County Chancery Court is vacated, and this cause is remanded to the trial court for further proceedings. Costs of this appeal are taxed to Appellee Felicia Davis, for which execution may issue if necessary.

---

[17] Given that the enforceability of the Original Contract is inextricably linked to these issues, it is difficult to discern how the issues in this case can be resolved without also resolving this central question.

- 15 -

_s/ J. Steven Stafford_
J. STEVEN STAFFORD, JUDGE